## Matter of the petition of the NEW YORK BRIDGE COMPANY to acquire land, &c.

Where, upon an application by a corporation, under the general railroad act, to acquire land for its purposes, a petition, full and complete in its statements, and containing all the requisite averments, is presented by the applicants, the fact that owners appear and show cause, denying some of the allegations in the petition, and objecting to the legality of the proceedings,

does not create issues which render it obligatory upon the petitioners to prove the facts alleged in the petition.

The fifteenth section of that act puts upon the owner of the land the burden of proving, and by legal evidence, that the facts alleged in the petition are not true. An affidavit or answer is not sufficient for that purpose.

If, on the day of showing cause, no testimony is given or offered, showing the facts set forth in the petition to be untrue, an order may properly be made, appointing commissioners of appraisal, without further proof of them than that presented by the petition.

Under the provisions of the act incorporating the New York Bridge Company, (*Laws of* 1867, *chap.* 399,) it is not necessary for such company to serve notices upon the actual occupants of land over or upon which the bridge is to extend or rest, in accordance with the provisions of section twenty-two of the general railroad act; and the omission to give such notices is not a jurisdictional defect.

Section twenty-six of the general railroad act, which provides that if any title or interest in real estate required by any company shall be vested in any trustee not authorized to sell, release or convey, or in any infant, idiot or person of unsound mind, the Supreme Court shall have power to authorize such trustee, or the general guardian or committee, to sell and convey the same, was designed to enable the trustee, guardian or committee to move in order to acquire the power to contract or agree for the sale of the land; and is not compulsory upon the railroad company.

By statutes passed in 1867 and 1869 the bridge across the East river, between New York and Brooklyn, was required to be completed on or before the first day of June, 1874. On the fifth day of June, 1874, four days after the expiration of the limit, the legislature passed an act providing for the completion of the bridge, and authorizing the cities of New York and Brooklyn, by the issue of bonds, to pay moneys, during the years 1874 and 1875, towards that object. *Held*, that this was not only a legislative waiver of the limit previously declared, but an extension of the time during which the bridge should be finished.

The provisions of the first section of said act of June, 1874, declaring that when the cities above named should accept the provisions of the third section, and when the owners of two thirds of the private stock of the bridge company should accept the provisions of the second section, then and thenceforth the board of directors of the company should consist of twenty members, to be appointed, eight by the mayor and comptroller of each of said cities, &c., is not a condition precedent controlling the effect of the act as a legislative waiver of the limit, or extension of the time of performance. Such waiver was absolute and unconditional.

APPEAL from an order appointing commissioners of appraisal. (*S. C., reported briefly,* 4 *Hun,* 635.)

*Edgar M. Cullen*, for the company.

*W. F. Shepard*, for the appellants.

*By the Court*, BRADY, J. The petitioner was incorporated, by chapter 399 of the Laws of 1867, for the purpose of constructing a bridge between the cities of New York and Brooklyn, provided the bridge was completed and opened to public use on or before the first of June, 1870.

The bridge was to commence at or near the junction of Main and Fulton streets in the city of Brooklyn, and to be so constructed as to cross the river, as directly as possible, to some point at or below Chatham Square, not south of the junction of Nassau and Chatham streets, in the city of New York. By the provisions of the same act the petitioner, in case of its inability to purchase the necessary land, was authorized to acquire the same by the proceedings prescribed by the general railroad act for the acquisition of land by railroad companies. The time within which the bridge was to be completed was, by chapter twenty-six of the Laws of 1869, extended to June 1, 1874; and by section three of chapter 601 of the Laws of 1874, a provision was made for the purpose of completing the same, and the cities of New York and Brooklyn were authorized, in addition to the amount which had then been subscribed, to issue bonds and to provide and to pay to the petitioner as follows: the city of New York, the sum of $500,000 in each of the years 1874 and 1875, and the city of Brooklyn $1,000,000 in each of said years and 1875, for which sum each was to be invested with the stock of the petitioner equal in amount to such sum paid.

This act was passed on the 5th of June, 1874. The petition contained all the necessary averments to comply with the requisitions of the statutes relating to such applications. It appeared from them that the lands

devised were devised by a testator to a trustee merely to lease the same, and from the rents to pay an annuity of $5,000 to the testator's widow during life, and, after certain payments, to pay the surplus to his three daughters; the will providing that after the death of the widow, the three children should each share one-third of the testator's property for life, with the remainder in fee to the children of his daughters, absolutely.

It appeared, further, that all of the children had been married and had issue; and that such issue were living and all infants under the age of twenty-one years.

The statements in these respects were full and complete. On the presentation of the petition all ·the infants appeared by a guardian *ad litem*, the daughters of the testator and mothers of the infants appeared by attorney and counsel, and the trustee also appeared. The infants submitted their rights to the protection of the court, and the adults showed cause, denying some of the allegations in the petition, and presenting a series of objections to the legality of the proceedings adopted, both in form and substance. No testimony was given or offered on either side. It is supposed by the appellants that such denials and answers created issues which rendered it obligatory upon the petitioners to prove the facts alleged by them in the petition; but this is an erroneous view of the statute.

The fifteenth section of the railroad act (*Laws* 1850, *p.* 211,) put upon the owner of the land the burden of proving, and by legal evidence, that the facts alleged in the petition are not true. And an affidavit or answer is not sufficient for that purpose. (*Buffalo and State Line R. R. Co.* v. *Reynolds and wife*, 6 *How. Pr. Rep.*, 96.)

The decision rests upon the language of the statute, which provides that all persons whose estates or interests are to be affected by the proceedings may show cause against granting the prayer of the petition, and "*may disprove* any of the facts alleged in it," &c.

The result of the application of the rule thus declared is that there was no proof showing the facts set forth in the petition to be untrue, and that the order of the court, made without further proof of them than that presented by the petition, was correctly made.

It was also urged by the respondents that no notice having been given to the actual occupants of the land over or upon which the bridge was to extend or rest, in accordance with the provisions of section twenty-two of the general railroad act, (*supra*,) and which, in reference to the locality or route of a railroad, requires that such notice shall be given, there was a jurisdictional defect, and the court could not proceed further in the matter. It will be seen, however, in reference to the act incorporating the petitioner (section 11) that although the special proceedings to acquire land shall be in accordance with the provisions of the general railroad act, and such act and the acts amendatory of it are made applicable, as far as may be, in like manner as if they were named in the act of incorporation, yet it is expressly provided that such modifications may be made in the formal part of the proceedings, in order to apply the same to the petitioners, instead of a railroad corporation, as shall be approved of by the Supreme Court.

And it is further provided that the court may make such orders and regulations, as to the mode and manner of conducting the proceedings, and all things relating thereto, as it may deem proper, so as to effectuate and make the same valid for acquiring title to such real estate. These provisions were induced by the difference between the thing to be done, the work to be accomplished, and the object in view, which was the construction of a bridge across a navigable river, and the laying out and making a railroad track — a work confined chiefly to the land — to give, in other words, to the Supreme Court, *mutatis mutandis*, the power of departing from the strict letter of the general railroad act in

requirements which were not designed to apply to the petitioner in proceedings of this character, or to the preliminaries which would be demanded of a railroad company, under the general railroad law.

For this reason, we think the court at Special Term was not without jurisdiction because the notices mentioned were not served, it being our judgment that the service of them on the part of the petitioner was not necessary, under the provisions of the act of incorporation.

It was also urged against the petitioner that under the provisions of section twenty-six of the general railroad law, (*supra*,) it was the duty of its officers to apply for the appointment of some person with whom an agreement could be made for the purchase of the land desired. It will be found, upon examination, however, that the provision of the section mentioned is for the benefit of the trustee and infant or idiot owner of the land, and not compulsory upon the railroad company. It provides that if any title or interest in real estate, required by any company formed under the act, shall be vested in any trustee not authorized to sell, release and convey the same, or in any infant, idiot or person of unsound mind, the Supreme Court shall have power, by a summary proceeding or petition, to authorize and empower such trustee, or the general guardian or committee of such infant, idiot or person of unsound mind, to sell and convey the same, on such terms as may be just, &c.

It is very clear that these provisions are designed to enable the trustee, guardian or committee to move, in order to acquire the power to contract or agree for the sale of the land, under the supervising power of the court, for the exercise of which provision is also made in the section.

It is to enable them to avoid the consequences of the appointment of a commission and the doubtful result of

appraisal, in cases where, if a fair price can be obtained by agreement, it may be secured for the owner. When the estate is in the hands of trustees, or situate as contemplated by this section, the compulsory mode is prescribed by section two of the act of 1857 (*Laws of* 1857, *p.* 871), amendatory of the general railroad act of 1850, (*supra.*)

It provides that when there shall be one or more of the estates enumerated in article one of title two of chapter one of the second part of the Revised Statutes, entitled "Of the creation and division of estates" in any land required by any railroad company for the purpose of its incorporation, such company may acquire such estate and land by means of the special proceedings authorized by the act thereby amended. It further provides for the statements to be contained in the petition, in addition to those required by the act thus amended, and demands such abundance and accuracy of detail as will enable the court to appreciate the character of the estate, and the persons interested in it, and provides, also, by the appointment of proper persons, attorneys or officers of the court, for the protection of the interest of such persons, not only before the appraisal is made, but subsequent thereto.

The estate, a part of which is sought by the proceedings herein, is embraced within the provisions of the Revised Statutes mentioned, and the petition presented contains, therefore, a statement in detail of the estate, its creation and the persons interested in it for life and in fee.

The objection urged, and now considered, cannot avail the respondents, therefore. It is not well taken.

It was also objected that the power of the petitioner to finish the bridge had ceased, even if the petitioner's corporate existence had not been terminated by the limits of the charter. And this objection rests on the provisions of the statutes of 1867 and 1869, (*supra,*) to the

effect that the bridge must be completed on or before the 1st of June, 1874. The answer to this is, as we have seen, that on the 5th of June, 1874, and four days after the expiration of the limit, the legislature passed an act providing for the completion of the bridge, and authorized the cities of New York and Brooklyn, by the issue of bonds, to pay moneys during the years 1874 and 1875 towards that object.

This was not only a legislative waiver of the limit previously declared, but an extension of the time within which the bridge should be finished. The provisions of the first section, declaring that when the cities of New York and Brooklyn should accept the provisions of the third section, and when the owners of two-thirds of the private stock of the New York Bridge Company should accept the provisions of the second section, then and thenceforth the board of directors of the company should consist of twenty members, to be appointed, eight by the mayor and comptroller of each of said cities, &c., is not a condition precedent, controlling the effect of the act as a legislative waiver of the limit, or extension of the time of performance. These provisions relate to the organization of the board of directors, and their authority to purchase from any private stockholder his rights, on his giving his assent to the act by an instrument in writing, &c.

The condition relates to the appointment of the directors in the manner stated in the act, and which cannot be accomplished until, as contemplated, the acceptance of the provisions of section three, relating to the issue of bonds for the amounts therein named, and the acceptance by two-thirds of the owners of the private stock, of the provisions of section two.

The completion of the bridge is not made by the act dependent upon such acceptance. The design of the statute was to give the cities of New York and Brooklyn the right to appoint eight directors, each, of the

board, and thus to have some control, respectively, of the operations of the company and of the appropriation of the moneys to be paid by them respectively, by a representation in the board to guard the rights of the municipalities whose funds were to be invested in the enterprise. There is nothing, therefore, in the objection considered. There was no condition imposed upon the right to finish the bridge by private accessions of money in case the cities of New York and Brooklyn declined to pay what was contemplated. The waiver of the forfeiture was not conditional. It was absolute and unconditional. (*The People* v. *The President &c. of the Manhattan Co.*, 9 *Wend.*, 380, 381.)

The objection that the map and survey required by the general railroad act was not filed in the clerk's office, was not well taken, because section 3, of chapter 560 of the Laws of 1871, directs that it be filed in the register's office.

The objection to the manner of service of notice of the proceeding upon one of the infants, if it had any merit, has been removed. She has appeared, and, on her own application, she being over fourteen years of age, a guardian was appointed to appear for her. He did so, and that circumstance gave the court jurisdiction.

These views cover the considerations pressed upon the argument and stated upon the points, except the proposition that the act of 1874, so far as it relates to the issue of bonds, is, under the provisions of the constitution, void, because no city can "give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation."

It has not been deemed necessary to consider this point, inasmuch as the right to issue bonds is not involved in this controversy, and because the subject to which it is allied, herein, namely, the waiver of the forfeiture depends upon the act of the legislature, and on no particular part of it.

It is the passage of an act after the time limited for performance, indicating plainly that the conditions of previous acts upon the subject should not prevail.

Forfeitures are not favored by the courts, as shown by the case in 9 *Wendell*, (*supra*,) and the authorities therein cited ; and the magnitude and importance of the enterprise to which this matter relates, and the private interests involved, are too great to be abandoned on any other than an unmistakable intention on the part of the legislature to destroy it.

The order should be affirmed.

Order affirmed.

