[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 14 
Among the numerous questions raised by the appellant, there are three which force themselves upon our attention. The proceeding is by the New York, Lackawanna and Western Railroad Company to condemn the lands of the Union Steamboat Company, and so results in a collision of corporations.
1. It is claimed, on behalf of the resisting land-owner, that the railroad company has not legally established its corporate existence. In its petition, by which the proceeding was initiated, and which was verified, a due incorporation of the company was affirmatively alleged. In a special proceeding the moving affidavit, or verified petition if full and complete, is ordinarily a sufficient basis for an order founded upon it. If *Page 17 
its material allegations are not denied by some counter affidavit they stand sufficiently proved for the purposes of the ultimate order. But if these are denied by a counter affidavit, and so an issue of fact is distinctly raised, it is common and in many cases necessary, that such issue should be solved upon a reference, or by the court itself upon the examination of witnesses, and the production of appropriate proofs. (Matter ofLockport Buffalo R.R. Co., 77 N.Y. 563.) In the present case there was no such issue raised over the question of corporate existence, since the counter affidavit of the land-owner did not deny the positive allegation of the petition in that respect, but contented itself with saying that such owner had no knowledge or information sufficient to form a belief upon the subject. The language used is "the said the Union Steamboat Company, respondent, denies that it has any knowledge or information of or as to all or any part of the allegation of or in the said petition that the said petitioner, at the time in that respect in said petition mentioned, was a railroad corporation duly incorporated and organized under and in pursuance of the laws of the State of New York sufficient to form a belief." Treating the answer of the land-owner simply as an affidavit, it fails to contradict the positive averment of incorporation, and results only in saying that the affiant does not know and has not learned whether the sworn assertion of the petition is true or not. If there was nothing in the case but the two affidavits touching the question of corporate existence, the court would be justified in acting upon the affirmative averment of the one, not effectively disputed by the other. But it may be suggested that we ought to treat these affidavits as pleadings and assimilate the proceeding to an action. That has been done in this court upon a question of costs. (Rensselaer Saratoga R.R. Co. v. Davis, 55 N.Y. 145. ) Even then the result is not changed. Treated as an answer there is no sufficient contradiction of the petitioner's pleading viewed as a complaint; for the Code provides, reproducing the amendatory act of 1875, that the plaintiff corporation need not prove its corporate existence, unless the answer is verified and contains an affirmative allegation that the *Page 18 
plaintiff is not a corporation. (§ 1776.) So that in either aspect of the proceeding the issue of corporate existence was not effectively raised, and the court was entitled to proceed upon the uncontradicted assertion of the moving petition. The question of corporate existence was first raised in the case upon exactly that state of the facts. The petitioner gave no further proof of incorporation beyond the statement sworn to in the petition, and rested. The steamboat company thereupon insisted that an issue was raised as to that subject by the answering affidavit and the burden was still upon the petitioner. The referee ruled otherwise, and correctly; for stopping at that point there was proof in the papers of corporate existence, and neither contradiction nor effective denial. (Matter of Lockport Buffalo R.R. Co., supra.) The land-owner company thereupon undertook to disprove the corporate existence under the provisions of the statute (Laws of 1850, chap. 140, § 15), by the terms of which it is apparently provided that the land-owner, even without filing a counter affidavit or answer, may still "disprove" any of the facts alleged in the petition. But that leaves him where he should be left, with the burden upon him of proving that the plaintiff is not a corporation, or contradicting the proof to that effect. In a case where he comes before the court not denying the affirmation of the petitioner, leaving that uncontradicted till he reaches his proofs, the burden must be upon him to establish the negative, since without that the petitioner's positive affidavit is sufficient ground and foundation for the order of the court. But the land-owner stands here disproving nothing upon that issue beyond merely producing the filed and recorded articles of association. If we should grant that the articles of association which it put in the case and criticised were shown to be the only articles which were ever signed or filed, and that, however defective, the State by subsequent legislation has never recognized and ratified the corporate existence, still it remains that the articles filed purport to be executed by twenty-five different persons, the execution by four of them being by an agent. Now, with the burden on the land-owner company of showing no corporate existence, it must do one of two things: *Page 19 
it must establish that some of those whose names appear did not in fact sign the articles, because the signatures were forgeries, or the agents unauthorized, or it must convince us that such articles of association cannot legally be executed by a duly authorized agent. The first it has not done, nor attempted to do; and the second would require us to say that one of the intended associates who had agreed with his fellows upon all the terms of the articles as expressed in the writing could not authorize one of them to do the mere manual act of signing his name, and, if disabled in his hand so as to be incapable of writing, could not become a corporator at all. The statute does not forbid it; the ordinary rules of law justify rather than condemn it; and we can discover no adequate reason for denying the right. The question here is not what presumptions should be drawn in a case where the burden was upon the corporation of proving affirmatively its corporate existence in the face of a direct denial sufficient to raise an issue to be tried, though even then, as has been argued here, that provision of the general act which makes the articles of association as filed and recorded presumptive evidence of the incorporation might very well have the effect to dispense in the first instance with proof of the genuineness of the signatures, or the authority of the agents, and leave both prima facie
established until some hostile proof was given; but the question here is barely whether the positive affidavit of due incorporation, sufficient by itself if unassailed, as the foundation of an order in the proceeding, has been so contradicted as to raise an issue, and, if not, whether its truth has been "disproved" by the land-owner having the burden of proof resting upon him. Is he entitled to overthrow a positive affidavit by calling to his aid a presumption that a signature is not genuine or an agency exercised was without authority in fact? We think not. The provision of the railroad act, and that of the Code, to which we have adverted indicate a general policy of the law. The charters of corporations are made matters of public record; their operations are carried on openly and in the face of the community; it is possible and easy for every citizen to ascertain their existence, and in a general *Page 20 
way the scope of their powers; the State stands on guard to challenge and defeat any unauthorized usurpation of a corporate franchise; and, therefore, it has been deemed just and wise not to permit the corporate existence to be drawn in question upon every assertion of a right or resort to a remedy, and to require that those who would challenge the due organization should deny it under oath, or bear the burden in a proceeding like this of disproving the incorporation alleged. Here there is an uncontradicted affidavit of corporate existence; confirmed by articles of association duly filed, and which are made presumptive evidence; articles which purport to have been executed and subscribed by twenty-five persons; which were so subscribed by twenty-five unless the signatures were false or agencies unauthorized; and the only attempt at the disproof permitted to the land-owner is the suggestion that the signatures, if genuine, may have been to some extent unauthorized. We can indulge in no such presumption for the purpose of making the articles invalid.
In Matter of N.Y. Bridge Co. (67 Barb. 295) it was held that the burden of disproving the allegations of the petition was wholly on the land-owner, whether there was a denial by affidavit or answer or not. But in Matter of N.Y. Central R.R. Co. (66 N.Y. 407) this court refused to go so far, and held in substance, that as to specific allegations capable of being disproved the burden was upon the land-owner; but as to those, of which the need of the property for the purposes of the railroad was the example, which were not capable of being disproved, it was enough "if he showed sufficient cause against the petition to put the petitioner to proof of matters lying specially within its knowledge." No such cause was here shown on the question of incorporation, for there was total absence of denial, and in its place a plea of ignorance; and holding as we do that the signing of the articles may be by an agent, their production proved the incorporation instead of disproving it, unless the agents were without authority. Whether they were or not was as open to the land-owner's inquiry as to that of the petitioner and could not be said to lie specially *Page 21 
within the knowledge of the company, for those whose names were signed and the alleged agents could as well be inquired of, or examined by the one party as the other. For these reasons we think the incorporation was sufficiently established.
2. It is further objected that the petitioner has lost its right to condemn lands by reason of its lease for the full period of its corporate life to the Delaware, Lackawanna and Western Railroad Company, a corporation organized under the laws of Pennsylvania. We do not understand that the validity of this lease as between the contracting parties is seriously questioned. (Laws of 1839, chap. 213; Woodruff v. Erie Railway Co.,93 N.Y. 609.) It must be treated as valid for the purposes of the objection, since if invalid, the question raised practically disappears. The ground insisted upon is that the lessor company, having parted with the entire control of its road for the full period of its existence, cannot longer be said to require any additional lands for its purposes, but such land could only be required for the purposes of the lessee. We are to observe precisely what the question is. If it is a legal possibility that the lessor company could need or require the property for its corporate uses, the question of fact whether in truth it did so need it was litigated and decided on the evidence favorably to the petitioner and with sufficient reason. But the contention here is, as matter of law, that such necessity could not by possibility survive the lease. Upon that point we think the case of Kip v. N.Y. Harlem R.R. Co. (67 N.Y. 227) should control our conclusion. There the lessor company had instituted proceedings for the condemnation of land. During the pendency of such proceedings it leased its road to another company and all its rights, franchises and privileges for the term of four hundred and one years. Thereafter the land-owner brought an action to restrain the further prosecution of the condemnation proceedings upon the precise ground taken here, that because of the lease, the lessor company could not possibly need or require under the law the property sought. The decision was adverse to that contention. The court said that the same necessity existed after as before the lease, "and it is *Page 22 
legally appropriate to affirm that it exists in favor of the defendant notwithstanding the lease." The appellant's criticism upon that case is that both parties were domestic corporations and here one is not. That is immaterial to the inquiry. If the lease here is valid, the debated question is the same, and whether the lessee company is a foreign corporation or not is of no consequence, for such lessee is not here seeking to condemn lands for itself. If the lease is void, then the lessor company stands like any other domestic railroad company seeking to acquire lands for its own purposes. If any justification of the case cited is needed it may be found in the fact that section 21 of the railroad act, as amended many times, evidently contemplates the acquisition of lands by companies which have leased their roads, and in the further consideration that by its lease the lessor company in no respect escapes from or lessens its corporate duty to the State, but is continuing the performance of that duty through the agency of its lessee, and may at any time, through the failure of the latter to perform its covenant obligations or by its absolute loss of corporate life and existence, become re-possessed of its line and property and bound to operate it for itself, and that to the proper performance of its duty by itself or through its lessee the acquisition of lands or terminal facilities may be necessary and essential.
3. It is further contended that the property sought to be taken is already so devoted to the public use as to protect it from condemnation to another public use. The proof shows that the Union Steamboat Company is a corporation created by and existing under the laws of this State, and engaged in the business of carrying by water passengers and freight on the great lakes of the north and using the property in question as a dock or wharf for the landing and delivery of a portion of its freight. In one sense, therefore, the property is already in use for public purposes, and quite as much so, it is contended, as it will or can be when devoted to the uses of the petitioner. Undoubtedly the facts bring us to the inquiry whether the use of corporate property for the public convenience and for purposes of a quasi
public character is sufficient to protect it from the *Page 23 
grasp, under the right of eminent domain, of another corporation whose property is held for similar public uses. The law did not confer upon the steamboat company the right to acquire land ininvitum, and that now held by it is held by purchase and by the same tenure as that of a private individual. The general authority conferred upon railroad corporations to acquire lands against the will of the owner is broad and comprehensive. In terms it covers all and excepts none. But because it could not be intended that the State, having authorized one taking, whereby the lands became impressed under authority of the sovereign with a public use, meant to nullify its own grant by authority to another corporation to take them again for another public use unless it so specifically decreed, it has been ruled that lands so held and impressed with a public trust were not embraced in words of general authority. Were the rule otherwise this evil would result: a corporation, number one, having the right of eminent domain, takes land from a similar corporation, number two, having the same right; number two thereupon proceeds again to condemn it for its own use and number one retaliates, and so the absurd process goes on. It is clear that the legislature never meant any such result, and hence, from any general grant containing in its terms no word of exception, there is necessarily excepted property already held upon a public trust by the authority and under the ward and control of the State. An examination of the cases in this court will show that the exception has gone no further. (Matter of B. A.R.R. Co.,53 N.Y. 574; Matter of N.Y.C. H.R.R.R. Co., 63 id. 326; Matterof Rochester Water Com'rs, 66 id. 413; Matter of the City ofBuffalo, 68 id. 167; P.P. C.I.R.R. Co. v. Williamson,
91 id. 552.) Is the property here sought to be condemned so held? The steamboat company was organized under a general law. (Laws of 1864, chap. 232.) Under that law it was and might remain a private corporation. Its charter did not make it a common carrier or impose upon it public obligations. If it became a common carrier, or assumed public obligations, that sprang from its own voluntary action and not from the will of the sovereign. *Page 24 
It might carry passengers or not as it pleased. It might transport freight for one firm or corporation, or a single individual, excluding all others, and confine its operations within that narrow boundary, and practically and mainly such was the scope of its business. It might use the lands here in question wholly for the purpose of building and equipping the vessels of its line and then apply them solely to private uses. The test appears to be, not what it does or may choose to do, but what under the law it must do, and whether a public trust is impressed upon it. It does not so hold its property impressed with a trust for the public use unless its charter puts that character upon it and so that it cannot be shaken off. If the law of its existence does not prevent it from being a mere private corporation, from disregarding if it pleases all public uses; if it may abandon its business at any moment and refuse to run its propellers and sell its lands by an absolute title without responsibility to the sovereign, which is permitted by its charter (§ 2); in short, if under that charter it may be a purely private corporation, its property is not so held as to be exempt from a taking under the law of eminent domain. Any other rule would be surrounded with difficulties. If the test should be made that of the actual use, of the character of the business done and the benefit to the public realized, we shall never know where to draw the line, and must equally exempt individuals whose property is thus used; and in every case an uncertain and shifting question of fact would dominate the decision to be rendered. There is no special hardship in sustaining this proceeding. The steamboat company does the bulk of its business at the Erie railroad docks and in connection with that company, and bought the land in question recently and subject to a five years' lease in the hands of an individual. A just appraisal we must assume will be made and adequate compensation be given.
The order should be affirmed, with costs.
All concur.
Order affirmed. *Page 25