ADIRONDACK RAILWAY COMPANY, Respondent, *v.* INDIAN RIVER COMPANY and Others, Appellants.

*Injunction to restrain the owners of land, described in a map and profile filed by a railroad corporation, from selling the land to the Forest Preserve Board — exercise of the power of eminent domain by the State — it cannot be limited.*

A railroad corporation, which had made and filed a map and profile of a proposed extension of its route over certain lands in the Adirondacks embraced within the forest preserve, as defined in chapter 395 of the Laws of 1895, and had given written notice thereof to the owners of such lands, brought an action against such owners and procured an injunction restraining them from conveying that portion of their lands embraced within the proposed extension of the railroad to the Forest Preserve Board, on the ground that the railroad corporation, by such proceeding, had acquired a lien upon such lands which further proceedings would ripen into a title through the purchase or condemnation thereof.

*Held,* that the injunction, though nominally one against the owners, was, in its effect, calculated to obstruct the Forest Preserve Board in the exercise of its powers and duties, and to some extent should be considered with reference to its effect upon the action of that board;

That the rule that the right of eminent domain should not be exercised in reference to land already condemned for a public use, unless expressly authorized, applied only to its exercise by virtue of delegated power given by the State to others, but did not apply to the exercise of such power by the State itself;

That the Legislature had no power to deprive the State of its right to condemn any land to its use, and that, even if the railroad company had a lien upon the land in question, that fact would afford no reason why the Forest Preserve Board should not acquire title to it;

That the use of land for the purpose of a railroad was inconsistent with its use as a part of the forest preserve;

That the constitutional provision, section 7 of article 7 of the New York Constitution, directing that the forest preserve land "shall not be leased, sold or exchanged, or be taken by any corporation, public or private," prohibited the

State from taking any land for such forest preserve, subject to the right of a railroad corporation to operate its road over the same;

That sections 290 and 291 of chapter 488 of the Laws of 1892, as amended by chapter 395 of the Laws of 1895, and chapter 220 of the Laws of 1897, were to the same effect.

APPEAL by the defendants, the Indian River Company and others, from an order of the Supreme Court, made at the Clinton Special Term and entered in the office of the clerk of the county of Essex on the 25th day of October, 1897, continuing an injunction *pendente lite.*

The defendants, being the owners of a large amount of wild land in townships Nos. 15 and 32, Totten and Crossfield's patent, so called, offered to sell the whole of township No. 15 and 18,000 acres in township 32 to the Forest Preserve Board ; such offer and negotiations finally culminated in the Board of Forest Preserve on the 6th of August, 1897, passing a resolution accepting such offer of the defendants, a portion of such resolution being as follows :

" *Resolved,* That we accept the offer of Mr. McEchron and the other owners of about 18,000 acres of Township 32, T. & C., and 24,000 acres of Township 15 of the same purchase, including in this total acreage 8,000 acres, more or less, of virgin forest land."

The defendants at that time were not the owners of all of township 15 or of all of the 18,000 acres in township 32, but proceeded to acquire and did become the owners in fee, or placed themselves in position to transfer to the State the title in fee to all of such lands prior to the filing of the maps by the plaintiff as hereinafter set forth.

The plaintiff is a railroad corporation, maintaining and operating a line of railroad from Saratoga Springs, in the county of Saratoga, to the village of North Creek, in the county of Warren, and has procured the right to extend the same to Long Lake, in the county of Hamilton. And for the purpose of extending its route to Long Lake it caused a map and profiles of its route from North Creek to Long Lake to be made, duly certified by the president and engineer, and filed such map or maps on the 18th day of September, 1897, in the offices of the clerks of the counties of Warren, Essex and Hamilton, through or into which counties such route extended, and thereupon gave written notice to each of the defendants, with the exception of the defendant Jeremiah W. Finch, whom it states at the time of the commencement of this proceeding it had not been able to

serve, stating the time and place where such maps and profiles were filed, and the route adopted by it passing over lands occupied by them. A portion of the route so adopted passes over the tract of land known as township 15 and over the land agreed to be sold by the defendants to the Board of Forest Preserve, and agreed by it to be purchased of the defendants.

The plaintiff commenced this action for an injunction restraining the defendants, and each of them, from conveying or suffering to be conveyed either directly or indirectly to the Forest Preserve Board or the State during the pendency of this action so much of that tract known as " Township 15 " as is comprised within the route adopted by plaintiff over said township, except said convey-ance be expressly made and received, subject to the right of way thereover of the plaintiff's own route; and that they be perpetually enjoined and restrained from conveying or suffering to be conveyed any portion of said township, except as subject to such right of way.

The plaintiff states in its complaint "that said tract known as 'Township 15,' as aforesaid, lies within the limits of the Adirondack Park, as defined and limited in and by the Fisheries, Game and Forest Law, and also within the limits of the forest preserve as defined and limited in and by said law."

The plaintiff's claim is that, if a conveyance was made without restriction, it would be deprived of its right to acquire a right of way by condemnation by virtue of the provisions of section 7, article 7 of the Constitution, " and as the lands adjacent to said ' Township 15,' on either side thereof, said lands being also within the limits of said forest preserve, have already been acquired and are owned by the State, will absolutely deprive plaintiff of its right to extend its road as aforesaid and put it to great and irreparable loss."

An injunction *pendente lite* was granted; an application was made to set it aside, which was denied, and a motion came on to be heard at a Special Term why such injunction should not be continued, and such injunction was continued, and from the order thereupon made this appeal is taken.

*Eugene L. Ashley, S. & L. M. Brown* and *Edward Winslow Paige,* for the appellants.

*Lewis E. Carr,* for the respondent.

HERRICK, J. :

The forest preserve, the Adirondack Park, and what shall be embraced therein, are defined in chapter 488 of the Laws of 1892, as amended by chapter 395 of the Laws of 1895.

By chapter 220 of the Laws of 1897 the Governor of the State of New York was authorized to appoint three persons to constitute a board, known as the Forest Preserve Board. Section 2 of that act provides that it shall be the duty of such board, and it is thereby authorized, " to acquire for the State, by purchase or otherwise, land, structures or waters, or such portion thereof in the territory embraced in the Adirondack park, as defined and limited by the fisheries, game and forest law, as it may deem advisable for the interests of the state."

The act prescribes how lands may be condemned and appropriated, and a method for the owners obtaining damages for such appropriation in the event of the Forest Preserve Board being unable to agree with them as to the value of the property so taken or appropriated.

The Forest Preserve Board, then, in making this agreement with the defendants for the purchase of its land was in the exercise of the powers, and in the performance of the duties, conferred and imposed upon it by the statute referred to ; and the injunction here, while in form one restraining the defendants only, it is evident must also operate to obstruct the Forest Preserve Board in the exercise of its powers and the performance of its duties, because if the defendants cannot convey title, the Forest Preserve Board cannot receive it.

Undoubtedly an injunction may be granted in proper cases to prevent public officers, under color of official power or duty, from doing some illegal act affecting injuriously individual rights or property. (*People* v. *Canal Board*, 55 N. Y. 390 ; *Flood* v. *Van Wormer*, 147 id. 284.)

But the illegality of the proposed act and the rights of the persons seeking the injunction should both be made plainly to appear ; and in determining an application for an injunction which, while in form against private persons only, yet, in effect, restrains or obstructs the action of public officers in the exercise of their

powers and the discharge of their official duties, the same consideration, to some extent at least, should be given to the rights of the State, the power and duties of the public officers, and as to whether their proposed action is illegal or not, as though the injunction applied for was to directly, instead of indirectly, restrain their action.

I shall, therefore, consider the rights of the State and the powers and duties of its officers and representative, "the Forest Preserve Board," as well as those of the plaintiff and the defendants, in determining whether this injunction should have been granted.

The Forest Preserve Board is exercising, in behalf of the State, that power known as the right of eminent domain, which is ordinarily exercised by first attempting to agree with the owners of the property to be taken upon the purchase price thereof, and if an agreement cannot be reached, then taking it by compulsory process, an appropriate tribunal awarding the owners their damages for the same; which is the proceeding authorized by the statute here, under and pursuant to which the Forest Preserve Board and the defendants were acting in making the agreement above referred to.

The plaintiff says, however, that the right to exercise this power of eminent domain has been conferred upon it, and that as part of the procedure in exercising that power it made maps and filed profiles of its proposed route, served notices upon the property owners, and has thereby acquired a lien upon the land, which further procedure will ripen into an absolute right or title. And that the property having been appropriated for one public use, it cannot be taken for another, without express authority of the Legislature.

It has been held that where a railroad corporation has made and filed a map and survey of the line of route it intends to adopt for the construction of its road, and has given the required notice to all persons affected thereby, it has acquired a right to construct and operate its road upon said line, and by these proceedings has impressed upon the land a lien in favor of its right to construct, which ripens into title through purchase or condemnation proceedings. (*Rochester, H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 110 N. Y. 128; *Suburban Rapid Transit Co.* v. *Mayor*, 128 id. 510.)

It will be observed that both these cases, and I think all others of similar purport, are cases where the contention was between corpo-

rations claiming to exercise the right of eminent domain. In no case that I have seen has the contention arisen between a corporation and the State. It is a power that cannot be asserted against or in opposition to the State; that it cannot be so asserted or exercised will be further discussed in another connection.

The plaintiff, claiming that it has thus acquired a right to the route in question — has, so to speak, appropriated it — further relies upon the rule which has been repeatedly stated by the courts that, where land has been once appropriated for a public purpose, it cannot be appropriated for another unless such authority is conferred in express terms or by necessary implication. (*Matter of B. & A. R. R. Co.*, 53 N. Y. 574; *Matter of Rochester Water Commissioners*, 66 id. 413, 418; *In the Matter of N. Y. C. & H. R. R. R. Co.*, 77 id. 248, 256; *Matter of Boston, Hoosac Tunnel & Western R. R. Co.*, 79 id. 64, 68.)

The above cases, as well as numerous others to the same effect, are cases where the power was attempted to be exercised by public corporations, some of them municipal, and none of them were cases where the State itself had, or was attempting to, exercise its power.

It is a rule of construction, not a definition of the power itself, for it is conceded that " the Legislature may interfere with property held by a corporation for one public use and apply it to another, and without compensation where no private interests are involved or invaded. The Legislature may delegate this power to public officers or to corporate bodies, municipal or other. It is a rule, however, that such delegation of power must be in express terms, or must arise from a necessary implication." (*Matter of City of Buffalo*, 68 N. Y. 167.)

The reason of the rule is stated to be: " Because it could not be intended that the State, having authorized one taking whereby the lands became impressed under authority of the sovereign with a public use, meant to nullify its own grant by authority to another corporation to take them again for another public use, unless it so specifically decreed, it has been ruled that lands so held and impressed with a public trust were not embraced in words of general authority. Were the rule otherwise, this evil would result: a corporation, number one, having the right of eminent domain, takes land from a similar corporation, number two, having the same right; number

two thereupon proceeds again to condemn it for its own use, and number one retaliates, and so the absurd process goes on. It is clear that the Legislature never meant any such result, and. hence, from any general grant containing in its terms no word of exception, there is necessarily excepted property already held upon a public trust by the authority and under the ward and control of the State." (*Matter of Petition of N. Y., L. & W. R. R. Co.*, 99 N. Y. 12, 23.)

The rule only applies to cases where authority has been conferred upon others to exercise the power, and neither the rule nor the reason for it applies where the State itself is exercising the right for its own immediate purposes.

The right or power of eminent domain is one inherent in and incident to sovereignty. Like the police power, it is one that cannot be alienated or parted with. (Black Const. Law, § 123, and note; Cooley Const. Lim. 524, 525.)

While the Legislature may authorize public or *quasi* public corporations to exercise such power for the public benefit, it cannot do so to such an extent as to prevent the State itself from exercising it at any time, nor can it place such corporations upon an equality with the State in the exercise of such powers.

The Legislature cannot alienate or part with any of the inherent sovereign powers of the State, or by any act preclude it from exercising them untrammelled by any restraints, except those voluntarily imposed by the Constitution itself. While refraining to act itself, the State may, in the meantime, authorize others to exercise the power; but such authorization or delegation is not a parting with any of its own power or authority in the premises, and, when it chooses to exercise that power, it is exclusive.

The authority to take and condemn lands for railroad purposes is subject to these limitations, and the plaintiff has no rights that it can assert in opposition to or in conflict with them.

Neither can the plaintiff avail itself of the principle that neither the State, nor any corporation authorized to take property for a public purpose, will take more than that purpose requires; and that where the use of property for one public purpose is not inconsistent with its use for a another public purpose, it may be used for both; and claim that the taking of this land for park purposes is not inconsistent with the use of a portion of it for railroad purposes.

To my mind the operating of a railroad through a tract of land is not in harmony with its use as a forest park.

And the declaration of the State, through its Constitution and by legislative acts, indicates very clearly, it seems to me, that the use and occupation of these lands, within the forest preserve of the Adirondack park, is intended to be exclusive.

Section 7 of article 7 of the Constitution reads as follows: "The lands of the State, now owned or hereafter acquired, constituting the forest preserve, as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, *or be taken by any corporation, public or private,* nor shall the timber thereon be sold, removed or destroyed."

The plaintiff realizes the full force and strength of this provision, because its action is brought upon the theory that if the State once acquires possession of this land, then, under the Constitution, it can acquire no right to operate its road through such land; and it seems to me a fair deduction from this that, if the State has no power to grant any such right, it should not take any land for the forest preserve subject to any such right.

If the granting by the State of any such right is inconsistent with its use as a forest preserve, then the acquiring of any land subject to such right would be inconsistent with the purpose for which it is acquired.

The Legislature has also spoken upon the subject. By section 290 of chapter 488 of the Laws of 1892, as amended by chapter 395 of the Laws of 1895, after describing what shall constitute the Adirondack Park, it provides as follows: "Such park shall be forever reserved, maintained and cared for as ground open for the free use of all the people for their health and pleasure, and as forest lands."

This, coupled with that portion of the Constitution providing that such forest preserve "shall be forever kept as wild forest lands," it seems to me is entirely inconsistent with the use of the same or any portion thereof for railroad purposes.

There seems to be an incongruity between the use and preservation of lands as wild forest lands and permitting railways to traverse the same; but there is a further indication of the intent of the State. Section 291 of the same chapter confers power upon the Forestry Commission to purchase land situated within the boundaries

of the park, and provides that, "If any such lands cannot be purchased on advantageous terms, unless subject to leases or restrictions, or the right to remove soft-wood timber, the contract may provide accordingly, but not for any such right, lease or restriction after ten years from the date of the contract."

Under well-known rules of statutory construction, this is exclusive.

Providing for their taking lands subject to specific-named burdens, excludes, by implication, their right to take them subject to any other burdens. (*Matter of Albany Street*, 11 Wend. 148; *Rathbone* v. *Wirth*, 6 App. Div. 289; approved, 150 N. Y. 475.)

They could not, therefore, take it subject to the right of the plaintiff to operate its road upon or through it, if for no other reason than that it runs for more than ten years.

By the Forest Preserve Act, being chapter 220 of the Laws of 1897, "the Forest Preserve Board" is authorized to acquire for the State, "by purchase or otherwise, lands, structures or waters, or such portion thereof in the territory embraced in the Adirondack park, as defined and limited by the fisheries, game and forest law, as it may deem advisable for the interests of the state." (§ 2.)

Section 3 authorizes such board to "enter on and take possession of any lands, structures and waters in the territory embraced in the Adirondack park," and other sections provide a method whereby the owners of such lands, structures or waters may obtain damages for the taking of such lands, structures and waters if they cannot agree with the Forest Preserve Board as to the amount.

The language of this section, I think, is abundantly sufficient to authorize the appropriation of land condemned for railroad purposes, and of the structures erected by any railroad within such park.

In chapter 220 there is also a proviso for the reservation of certain timber rights for a limited period of time by the owners of the land appropriated, and, under the rule of statutory construction I have before referred to, that excludes the reservation of any other right; so that it seems to me that, taking into consideration the purpose for which these lands are to be used, the wording of the Constitution and of these several acts of the Legislature, the use of these lands acquired, or to be acquired, in the Adirondack Park, was to be exclusive in the State, and excludes the use of them, or any portion of them, for any other than park purposes.

In addition, it may be said that the State authorities, in prescribing the boundaries of the park, which included within it these lands, and authorizing the acquisition of any and all lands within its boundaries for park purposes, was public notice to the plaintiff and others that whatever rights, final or inchoate, they might acquire therein they took subject to being divested of them by the State acquiring the land for its own purposes.

I think, therefore, that plaintiff had no rights under the privilege granted to it to condemn land for railroad purposes, and had acquired none that it could assert against the State.

That the using of lands for railroad purposes is inconsistent with devoting and preserving it for park purposes as wild forest lands.

That the State intended to take and hold the lands in the Adirondack Park free and clear of all incumbrances, and that the Forest Preserve Board, in its agreement with the defendants to purchase lands, was exercising the power of eminent domain for the State.

That any rights or privileges the plaintiff has under the power of eminent domain were taken subject and subordinate to the right of the State to exercise that power in its own immediate behalf.

But, on the other hand, if the plaintiff is right in its contention that, by making and filing its maps and profiles, and serving the required notices, it acquired a lien upon the land, it needs no injunction to protect its rights; for any conveyance by the defendants must be subject to that lien, and, as the State can only acquire from the defendants what the defendants can lawfully convey, it would take such lands subject to the plaintiff's lien or right to build its road.

I am of the opinion, therefore, that, because in one aspect of the case an injunction is not needed to protect the plaintiff's claim of right, and in another aspect of the case it is a practical interference with, restraint upon and obstruction to, the exercise by the State of its power of eminent domain, the injunction should be vacated and set aside.

All concurred; PARKER, P. J., LANDON and MERWIN, JJ., upon grounds last stated in opinion.

Order reversed and injunction vacated, with ten dollars costs and disbursements.