THE STATE, VAN REIPEN ET AL., PROSECUTORS, v. THE MAYOR, &c., OF JERSEY CITY AND THE JERSEY CITY WATER COMPANY.

THE STATE, MORRIS CANAL AND BANKING COMPANY ET AL., PROSECUTORS, v. THE SAME.

THE STATE, MONTCLAIR WATER COMPANY, PROSECUTOR, v. THE SAME.

THE STATE, JOHN WHELIMAN, PROSECUTOR, v. THE SAME.

THE STATE, HORACE H. FARRIER, PROSECUTOR, v. THE SAME.

THE STATE, THE ROCKAWAY AND HUDSON COMPANY, PROSECUTOR, v. THE SAME.

1. The act of 1888 (*Pamph. L.*, *p.* 366) is constitutional, and authorizes Jersey City to contract for a water-supply.

2. The charter of the Morris canal, and the fact that its water rights are held for a *quasi*-public use, furnish no insurmountable obstacle to the appropriation of such rights to the uses of the state for the preservation of the public health and safety, upon just compensation being made, but the right to condemn must be clearly granted by the legislature.

3. The act of 1895 (*Pamph. L.*, *p.* 769) does not authorize the water rights granted by charter to said canal to be condemned for the use of Jersey City.

4. In the absence of fraud or palpable abuse of discretion on the part of the municipal authorities, the only question for judicial cognizance is whether there has been any violation of legal principles or the neglect of any prescribed formalities in entering into the water contract.

5. A contract for water-supply must be awarded to the responsible bidder who offers the most advantageous terms, and proposals must be advertised for.

6. Bidders must have an opportunity to compete, and that can be afforded only by definite specifications to which all bidders can conform.

7. Bids having been expressly invited upon the condition that the contractor should provide reservoirs capable of storing a water-supply for

one hundred days' delivery, at the rate of fifty millions of gallons per diem, the contract was not lawfully awarded to one of the bidders, for the reason that it offered to provide a storage capacity sufficient for two hundred and fifty days.

On *certiorari.*

These cases were argued together at November Term, 1895, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the prosecutors, *Frederic W. Stevens, Collins & Corbin, Allan L. McDermott* and *Dickinson, Thompson & McMaster.*

For the defendants, *John A. Blair, Spencer Weart, William D. Guthrie, James B. Vredenburgh* and *Wallis, Edwards & Bumsted.*

The opinion of the court was delivered by

VAN SYCKEL, J. The writs are prosecuted for the purpose of reviewing the award of a contract by Jersey City to the Jersey City Water Company, for the supply of pure water to Jersey City for a term of twenty-five years.

Three questions upon which, in the judgment of the court, the case turns will be considered.

*First.* Is the act of 1888 (*Pamph. L., p.* 366) constitutional?

It provides " that it shall be lawful for the board of aldermen, common council, city council, aqueduct board, board of public works, water commissioners, township committee, town committee, or other board, body or department of any municipal corporation in this state, having the charge or control of the water-supply of any such municipal corporation, to make and enter into a contract or agreement; * * * provided, that in any municipal corporation having a board of public works and a board of finance and taxation, if the contract and agreement be made and entered into by any such board of public works, it shall not be binding upon such municipal

corporation until the same shall have been approved by such board of finance and taxation." *Gen. Stat., p.* 2210.

Jersey City, at the time this act was passed, was the only city in the state which had a board of public works and also a board of finance and taxation. It is, therefore, insisted that this proviso, which applies only to Jersey City, makes the act special and local.

This act was not designed to effect any change, nor does it in any respect change the body to which the contract for a water-supply is committed in any of the local governments of the state.

An act creating these different boards and at the same time lodging that power in one city in a board of works, in a second in the common council, and in a third in water commissioners, might be regarded as infirm in that respect.

The control of the water-supply is left by this act in every municipality precisely where it was previous to its passage.

The purpose and substance of this legislation is to confer upon the various local governments in the state the right to make a contract for water-supply through the department which controls that subject, by whatever name it may be called. The name of the board or department is not material, nor is it the substance of the act, for, after specifying various boards which may have the control of the subject, the act says, " or other board, body or department of any municipal corporation in this state having the charge or control of the water-supply."

The act must be interpreted as if it was simply in the following form:

" That it shall be lawful for the board, body or department of any municipal corporation in this state having charge or control of the water-supply of any such municipal corporation, to make and enter into a contract," &c.

The act is general; it creates no dissimilarity; it is uniform in its effect, committing the subject everywhere to the same department—that is. to the persons who have control of the water-supply.

The diversity of name by which such department may be designated, and of the manner in which it is constituted, was not created by the act of 1888, and is wholly immaterial so far as concerns the generality of this statute.

By the act of 1874 (*Pamph. L.*, *p.* 508, § 9), the board of public works of Jersey City cannot make a contract for the payment of any sum of money which exceeds $2,000 without the concurrence of the board of finance and taxation.

The department in Jersey City in which, at the time of the passage of the act of 1888, control of the water-supply was lodged, was the board of public works and the board of finance and taxation.

The act of 1888, therefore, without the proviso, embraced Jersey City, and required the concurrent action of the two boards, which together constituted the department in charge or control of the water-supply for Jersey City. The proviso made no change whatever in the legal effect of the act. The draftsman of it manifestly had in his mind the fact that in Jersey City the department in control of the water-supply consisted of two separate boards, and, out of abundant caution, he inserted the proviso, so that Jersey City might not be excluded from the benefit of its provisions, and the act thereby rendered special and local.

The act is constitutional.

*Second.* Under the act of 1895 (*Pamph. L.*, *p.* 769; *Gen. Stat.*, *p.* 1388), can any part of the water rights granted by charter of the legislature to the Morris Canal Company be condemned for the use of Jersey City?

The contention is that the canal charter of 1824 constitutes a valid contract, which cannot be impaired, and that its water rights, which, under and by authority of its charter, are now devoted to a public use, cannot be taken under the power of eminent domain.

Every government which regards the welfare of its people will exert its highest power to preserve the public health and safety. To that end a supply of pure water is essential. To secure it involves the exercise by the state not only of the power of eminent domain, but also of the police power.

These necessities of the public are supreme, and private rights must yield to them.

That I understand to be the accepted rule.

The right, however, to take private property, or the property of a corporation, must be clearly granted by the legislature.

In *Jersey City* v. *Montclair Railway Co.*, 6 *Vroom* 328, there was no such grant of power.

The charter of the Morris canal and the fact that its water rights are held for a *quasi*-public use, furnish no insurmountable obstacle to the appropriation of such rights to the uses of the state for the preservation of the public health and safety, upon just compensation being made. *Newark* v. *Watson*, 27 *Vroom* 667; *In re New York, Lackawanna and Western Railroad Co.*, 99 *N. Y.* 12; *Central Bridge* v. *Lowell*, 4 *Gray* 474; *Springfield* v. *Connecticut River Railroad Co.*, 4 *Cush.* 63.

The question is whether the act of 1895 authorizes the taking of the water rights of the Morris canal for a water-supply to the municipalities of the state.

The act provides: "That when the proper board or other municipal authority of any city of this state shall deem it proper to acquire land, water, water rights or property within or without said city for the purpose of supplying said city with water, the power of condemnation may be resorted to as in the act provided."

The act contains this proviso: "That no lands, water, water rights or other property purchased, condemned or held by any municipality in this state for the purposes of a water-supply, and used or intended to be used for such purpose, shall be condemned or taken under the authority of this act."

If, in this statute, authority can be found to take the water rights of the Morris canal, Jersey City may invoke in its aid the right of eminent domain.

It is immaterial whether the grant of power is contained in the express words of the statute or arises by necessary implication. Its force and value, when established, are no more potent in the one case than in the other.

The act provides for condemnation of land, water, water rights or property, when the governing authorities deem it proper to acquire them.

This language is not, in my judgment, broad enough to include lands and water rights held and owned by the Morris canal for its uses under state authority.

The grant of power is not more extensive than that usually vested in local governments to acquire lands for public highways. Such a grant, under adjudged cases in this court, does not carry the right to extinguish the franchises of railroad corporations.

Every franchise granted by the state is exclusive, except as against the state, in the absence of express provision or necessary implication to the contrary.

While the government, in the exercise of its sovereignty, may sanction the acquisition of rights resting upon prior grant, on just compensation being made, no power to take will flow from mere authority to acquire by condemnation such rights as a city may deem it proper to obtain.

This doctrine is clearly enunciated and firmly established in this court, in the case of *New Jersey Southern Railroad Co.* v. *Long Branch Commissioners*, 10 *Vroom* 28. There a right to lay a street across a railroad was necessarily implied, otherwise the charter privilege to the defendants would have been futile.

The proviso in the act cannot be construed to enlarge it, and extend its terms beyond the clear meaning and accepted signification of the body of the act. The office of a proviso generally is too narrow and restrains the enacting clause.

In *Lanning* v. *Lanning*, 2 *C. E. Gr.* 228, Chancellor Green said "that the proviso of a statute is generally intended to restrain the enacting clause and to except something which would otherwise have been within it, or, in some measure, to modify the enacting clause. It is a limitation of, or exception to, the authority conferred."

The proviso of an act is sometimes resorted to for the interpretation of ambiguous or doubtful language in the enacting

clause, but there is nothing ambiguous or doubtful for interpretation in this case. It is the ordinary grant of power, under which it is settled in this court that rights previously acquired under the power of eminent domain cannot be assailed.

The proviso was evidently inserted to allay any apprehension which might otherwise have arisen in adjacent municipalities which had theretofore secured a water-supply.

If the body of the act had provided that the lands and water rights of every person, by whatever title acquired or held, might be extinguished by condemnation, a different case would be presented.

It might then, with much force, be contended that, by the exception in the proviso of one corporation from the operation of the act, its framer, by the use of the word "person," intended to subject persons, both natural and artificial, to its provisions, and that no corporation could claim exclusion save the one specified.

*Third.* The question remains whether the contract is valid, if power is lodged in the city to make a contract.

This court disclaims the right to interfere with the exercise of that discretion, which has been confided to the city officials, and to substitute its judgment for theirs. We are possessed of no expert knowledge upon the subject of water-supply which will enable us to pronounce with any confidence that the judgment of those to whom this municipal scheme is entrusted is not well founded. We cannot, therefore, enter into the discussion as to the comparative merits of the several bids under the proposals put forth. In that issue this court is not the constituted arbiter.

In the absence of fraud or a palpable abuse of discretion on the part of the municipal authorities, the only question for judicial cognizance is whether there has been any violation of legal principles or neglect of prescribed formalities in entering into the engagement which is the subject of this controversy.

The charter of Jersey City provides that no contract for

work or materials shall be entered into except after due advertisement for six days, whereupon the contract shall be awarded to that responsible bidder who offers the most advantageous terms. *Pamph. L.* 1871, *p.* 1160, § 159.

In a recent case in the Court of Errors and Appeals, this charter provision was held to be dominant in Jersey City. *Board of Finance* v. *Jersey City*, 28 *Vroom* 452.

In the same case it was held that, by the fourteenth section of the act of March 28th, 1891 (*Pamph. L., p.* 249), which creates for cities of the first class, boards of street and water commissioners, and defines their powers and duties, the provision of the charter of Jersey City, above referred to, became applicable to the board of street and water commissioners.

It is highly improbable that the legislature, while the charter of Jersey City forbade a contract for work or materials for even a comparatively small amount, without advertising for bids, intended by the act of 1888 to remove that check upon disbursements and safeguard to taxpayers in the contract for water-supply at a cost of $7,000,000.

A construction of that act so inimical to the public policy, which has almost universally provided this legislative restraint upon the action of officials in the expenditure of the public funds, cannot be accepted unless the act will bear no other reasonable reading.

There is no express repealer in the act of 1888 of the provision of the act of 1871. There is no inconsistency between the two acts; they can stand together and must be upheld if they can be harmonized.

The later act authorizes a contract for water-supply without specifying how that contract shall be entered into. It is not only entirely consistent with that act, that the contract shall be made as provided in the charter of 1871, but in the absence of language excluding that form, it is the true interpretation of it. The fourteenth section of the act of 1891 clearly indicates the legislative purpose to preserve the charter provision of 1871 and to apply it to all contracts. ·

It will be assumed, therefore, that the board of works must

advertise for proposals and that the contract must be awarded in conformity with the proposals.

The city can make a contract only in the mode prescribed by statute.

In *Shaw* v. *Trenton*, 20 *Vroom* 339, Mr. Justice Magie held that where the proposals advertised required bidders to guarantee rubber hose for six years, a contract could not be supported which was given to a bidder who was not the lowest, partly for the reason that he offered to warrant for nine years. In his opinion he says: "In my judgment, the contract awarded with a warranty for nine years was not the contract for which proposals were asked, and therefore the competition required by section 107 of the charter was not afforded."

Although that case was reversed in the Court of Errors and Appeals on a new point, the views expressed in the Supreme Court were concurred in. *Shaw* v. *Trenton*, 20 *Vroom* 638.

The case of *McDermott* v. *Jersey City*, 27 *Vroom* 273, is to the like effect.

By the rule adopted in these cases, the validity of the Jersey City contract must be tested.

The proposals for bids, among other things, require that "the contractor shall provide independent reservoirs and storage basins, located within the State of New Jersey, in such places as to receive and be capable of storing a water-supply of one hundred days' delivery hereunder, at the rate of fifty million gallons per day."

The reasonable interpretation of this clause, and that which would ordinarily be given to it by bidders, is that the bid must be made upon the basis of one hundred days' storage.

It is apparent that, as you increase the storage capacity, you lessen the drainage area essential to keep up the requisite supply per diem under the contract. So that it was a matter of great importance to the bidder to understand whether he was to secure and control a drainage area of sixty-five square miles or one of double that extent.

Under this construction of the terms of the proposals, bids,

to be lawfully considered, must have been made upon the assumption that the drainage area was ample to give the stipulated per diem supply during the entire year, with a storage capacity for one hundred days only.

Bids not upon that basis would not fairly come into competition.

If the proposal is construed to invite bids upon the basis that the minimum storage capacity shall be for one hundred days, then the proposals are defective and insufficient, and the contract cannot be sanctioned.

No contract can be upheld under proposals which do not require competitive bids upon the same definite basis.

How could the bidder tell whether the city would prefer a drainage area of one hundred and twenty square miles, with a storage capacity for one hundred days, or a drainage area of sixty-five square miles, with two hundred and fifty days' storage?

How could one bidder know the storage capacity which another would offer, so as to meet his bid?

It is a disputed question in this case whether the lesser drainage area with the larger storage capacity is of equal value with the larger drainage area and the lesser storage.

Bidders must have the opportunity to compete, and that can be afforded only by definite specifications to which all bidders can conform.

The city may invite bids in various forms, provided each proposal is upon a specific, definite plan.

If all had been invited to bid upon the condition that there should be one hundred days' storage, and also on the terms of two hundred and fifty days' storage, then the city authorities would have had the right to accept the larger or the lesser drainage area.

In that case opportunity would have been given for the competition which is a prerequisite to a valid contract.

The fact that the Jersey City Water Company offered two hundred and fifty days' storage, was one of the circumstances which was persuasive in securing the award of the contract to

that company, as appears by the report of the committee, on page 121 of the printed case, and also by estimates made and by the discussion of the case before us.

It is necessary to refer only to page 38 of the brief of counsel for the Jersey City Water Company to support this statement.

In answer to the objection that the contract was awarded on the basis of an offer of storage capacity beyond that required by the specifications, the brief contains this reply :

"The facts with regard to this are fully shown by the report of the committee of the whole, of the board of street and water commissioners to that board, on pages 121 to 129. The advantage of large storage capacity is also a business proposition clearly within the discretion allowed by the board. When what the board did is carefully examined, with the facts admitted, it will be seen that the board had a right to consider the advantage of this large storage, bearing as it does upon the purity of the water, and the scarcity in times of great drought. It there appears that the storage capacity was only one of the many elements which entered into the final judgment; that the Jersey City Water Company was the most advantageous bid to the city."

We have not failed to notice that the reply brief of the same counsel takes a somewhat different position.

Whether other bids, if proposed for upon the larger storage basis, would have been more favorable to the city cannot be known until such bids are called for.

So it seems apparent that, in order to give a fair opportunity for competition, and to make an intelligent comparison of the bids, the proposals should specify whether there shall be a single pipe line or two pipe lines.

It is not necessary to discuss other alleged infirmities in the proposals and the award of the contract under them.

The contract, as awarded to the Jersey City Water Company, is interdicted by the case of *Shaw* v. *Trenton, supra,* and must be set aside.