THOMAS F. DUNIGAN, PROSECUTOR, v. THE TOWNSHIP OF WOODBRIDGE, IN THE COUNTY OF MIDDLESEX, ET AL.

Submitted March 19, 1909—Decided July 6, 1909.

A township committee invited bids for the macadamizing of a part of a road, and at a subsequent meeting awarded the contract to *C*, the highest of three bidders, *A* being the lowest. At the same meeting the committee awarded another contract for similar work on another street to *A*, the highest bidder, although *C* was a lower bidder for that work. It also appears that the award of the first contract was made to *C* for reasons personal to the committee. *Held*, that although no statute required the award to be made to the lowest responsible bidder, yet the committee so abused its discretion in awarding the contract as to invalidate the award.

---

On *certiorari* bringing up a contract made on July 4th, 1908, by the township committee of the township of Woodbridge, with W. R. Thompson, for the macadamizing of part

of the road at Avenal in the said township, known as Woodbridge avenue.

Before Justices REED, TRENCHARD and MINTURN.

For the prosecutor, *Robert Adrain.*

For the township of Woodbridge, *Ephraim Cutter.*

For W. R. Thompson, *Alan H. Strong.*

The opinion of the court was delivered by

REED, J.   On May 28th, 1908, the township committee of Woodbridge township directed the clerk of the township to advertise for bids for macadamizing a portion of Woodbridge avenue.   In response to the advertisement, propositions for executing the work were received, one from the prosecutor, Mr. T. F. Dunigan, one from Liddle & Pfeiffer, and one from W. R. Thompson.   Mr. Dunigan proposed to execute the work for the price of ninety-three cents per square yard. Messrs. Liddle & Pfeiffer proposed to do the work for ninety-eight cents per square yard.   Mr. W. R. Thompson's bid was to execute the work for $1.18 per square yard.

On June 12th the township committee awarded the contract to the last-named bidder, Mr. W. R. Thompson.

At a meeting of the committee held on June 22d, Mr. Dunigan, the prosecutor, appeared and protested against the award of the contract to Mr. Thompson.   No action was taken by the committee upon his protest, but at a meeting held on June 27th, it was resolved that the clerk and chairman be authorized to execute a contract, for the macadamizing of this portion of the avenue, with Mr. Thompson, in accordance with the plans upon which the bid was made, and upon July 4th the contract was executed.

It is admitted that the township committee, in awarding the contract for the execution of this work, was not restrained by any statute requiring competitive bidding, and therefore the committee was not controlled by the usual and useful re-

quirement that the award for such work and such amounts should be awarded to the lowest responsible bidder.

The inquiry, therefore, is confined to the question whether the award of the contract to Mr. Thompson was such an abuse of discretion as to justify the interference of this court. *Van Reipen* v. *Jersey City*, 29 *Vroom* 262; *Ryan* v. *Paterson*, 37 *Id.* 533; *Hicks* v. *Long Branch Commissioners*, 40 *Id.* 300.

It is perceived that this contract was awarded to Mr. Thompson, who was to be paid at the rate of $1.18 per square yard, while Mr. Dunigan proposed to execute the same work for a compensation of ninety-three cents per square yard, and Liddle & Pfeiffer for a compensation of ninety-eight cents per square yard.

The selection of Mr. Thompson rather than Mr. Dunigan cannot be vindicated upon the ground that the former was the more experienced and the more responsible bidder. This appears from the single fact that at the same meeting at which the bids were opened for the execution of this work, bids were also opened by the same committee for macadamizing William street, in the township of Woodbridge. For the execution of this work both Mr. Thompson and Mr. Dunigan were bidders, the bid of Mr. Thompson being sixty-nine cents per square yard and that of Mr. Dunigan being ninety-seven cents per square yard. The contract for this work was awarded to Mr. Dunigan. So it appears that on the same evening the committee awarded a contract to Mr. Thompson at the rate of $1.18 per square yard for work which Mr. Dunigan proposed to execute for ninety-three cents per square yard, and then awarded a contract to Mr. Dunigan at the rate of ninety-seven cents per square yard for similar work, which Mr. Thompson proposed to do for sixty-nine cents per square yard.

The difference in the conditions under which the two contracts were to be executed, which the township committee claims to exist, has no substantial foundation.

So that it cannot be said, that Mr. Dunigan was not responsible and capable of executing the contract for work on Woodbridge avenue in the face of the fact that the very same evening he was selected to do similar work on William street.

The defendants called two members of the township committee to explain their inconsistent action. Mr. Lee's explanation was that his attention had been called by some taxpayers to the fact that they did not think Mr. Dunigan, in executing a previous contract to improve New and Second streets, was putting on the required amount of stone, and that he himself noticed what he regarded as some defects. Yet it appears that the contract price for that very work was paid by the approval of the committee, of which Lee was a member, without any dissent by any member of the committee indicating his disapproval of the work.

Mr. Lee says the contract was not given to Liddle & Pfeiffer, whose proposal was to do the work for ninety-eight cents per square yard, because the committee did not think they could do a good job at that price, and because they were men from out of town, and they (the committee) would consider a bidder in the township before a bidder out of the township. He says they did not give the contract to Mr. Dunigan because they thought he could not do the work for ninety-three cents per square yard. He admits, however, that the contractor had to give a bond for the execution of his contract.

In answer to the question why the contract for the William street work was not given him as the lowest bidder, Mr. Lee said: "We considered the giving of this contract a matter for the township committee, that we had the right to give the contract to whom we wanted to." He was asked:

"Q. You were bound to see that Tom Dunigan would get that William street contract?

"A. Yes.

"Q. Were you friendly to him?

"A. Yes, I was.

"Q. And on Woodbridge avenue; you were bound to have Raymond Thompson have that street for $1.18?

"A. Yes."

Again he said: "We had determined to give that bid (the William street bid) to Tom Dunigan irrespective of what the bids were."

Mr. Dooley, the other examined member of the committee, says that "Some persons were kicking about the way the former work had been done by Dunigan, but I never said anything to Dunigan, and approved of his payment and voted for the William street contract."

This testimony in fact shows that there was a determination for personal reasons to divide the work to be done upon the two streets, by giving one to Mr. Dunigan and the other to Mr. Thompson, and to see that each got a price in excess of other bids.

I think there was a clear abuse of discretion.

Nor can laches be imputed to the prosecutor. The award was made on June 12th, a remonstrance was made by Mr. Dunigan on June 22d, and nothing was done by the committee at that time. The final resolution to execute the contract was passed on June 27th and the contract was executed on July 4th. A rule to show cause why a *certiorari* should not be allowed was obtained July 11th. This certainly exhibited due diligence.

The contract must be set aside.