MAYOR AND ALDERMEN OF THE CITY OF PATERSON v. MAYOR AND ALDERMEN OF THE CITY OF JERSEY CITY.

Argued February 20, 1913—Decided June 14, 1913.

When the legislature authorized cities to condemn water and water rights for the purpose of supplying the city with water (*Comp. Stat.*, p. 2198, *pl.* 38), it by necessary implication authorized the condemnation of the right of another city to the undiminished flow of a river for purposes of pleasure and recreation in connection with its parks, in a case where the quantity of water necessary for the use of the river by the latter city depended upon the dams lower down the stream.

On *certiorari*.

Commissioners were appointed upon the application of Jersey City to condemn the right to take and divert perpetually from the Rockaway river, at Boonton, the quantity of water necessary for its water-supply, as against riparian lands of Paterson, known as West Side park, the engine house lot and East Side park. The city of Paterson resists condemnation because it claims that the water is already devoted to a public use, in that its flow is valuable to the two city parks and the engine house lot. West Side park is above the dam of the Society for Establishing Useful Manufactures, and East Side park is above the Dundee dam. Both parks are along the slack water caused by these dams. Water flows over the S. U. M. dam ten months of the year, and even in July and August, there would be water flowing over the dam but for the fact that the S. U. M. is drawing all that comes through its flume. The level of the water at the East Side park seems to depend entirely upon the Dundee dam, but the water is so foul that it is not used for boating or similar purposes in connection with the park. The amount of water which it would be possible for Jersey City to divert in dry seasons is seven million gallons daily, and when she diverted that quantity sixty million gallons still passed down the Passaic river. The

average daily flow of the river in the driest season was ninety-seven million gallons; the average daily flow for fifteen years has been about nine hundred and fifteen million gallons. The total quantity of water proposed to be diverted to Jersey City and other municipalities that have similar condemnation proceedings pending, and by the city of Newark, would leave in the driest seasons fifty million gallons daily to flow past Paterson, and this amount is ample to supply the mill ponds above the East Side and West Side parks; "the ordinary elevation of the water would in nowise be affected by the diversion."

Before Justices SWAYZE, VOORHEES and KALISCH.

For the prosecutor, *John W. Griggs* and *William B. Gourley* (*Edward F. Merrey* on the brief).

For the defendant, *Gilbert Collins* (*Michael T. Barrett, Daniel J. Murray* and *Davis & Hastings* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The only objection urged to these proceedings is that Jersey City is seeking to condemn property already devoted to a public use. This is not an accurate statement of the case. What Jersey City is seeking to acquire is a right to a joint user of running water. It is true that the use to which Jersey City is to put the water involves its abstraction from the stream, while the use to which Paterson puts it is for purposes of pleasure and recreation in connection with its parks, involving the use of the flow only. But as long as the legislature authorizes in response to public necessities, the abstraction of water from a river for a municipal water-supply, this use is as lawful as the other. The case therefore resembles the cases of joint user of a common easement. *Morris and Essex Railroad Co.* v. *Central Railroad Co.,* 2 *Vroom* 205; *National Docks, &c., Co.* v. *United Companies,* 24 *Id.* 217. We need not consider the relative importance of supplying Jersey City with an absolute necessity and the importance of allowing

Paterson the pleasures of boating and skating. When the legislature in 1895 authorized cities to condemn water and water rights for the purpose of supplying the city with water (*Comp. Stat.*, p. 2198, *pl.* 38), it by necessary implication authorized the condemnation of such rights as Paterson had in the flow of the stream, at least to the extent required in the present case. The situation differs from that in *Van Reipen* v. *Jersey City*, 29 *Vroom* 262. It was there held that the general grant in the act of 1895 of power to condemn did not carry the right to extinguish the franchises of the Morris canal. Jersey City in this case does not seek to extinguish the rights of Paterson in its public parks, or in the river flowing by them; it hardly seeks to disturb them under the evidence in the case, since the quantity of water necessary for the use of the river by Paterson depends on the two dams, rather than on the abstraction of water above.

The proceedings are affirmed, with costs.