BENDIX A. EBBESON,

*vs.*

BOARD OF PUBLIC EDUCATION IN WILMINGTON, a corporation existing under the laws of the State of Delaware, and WILLIAM M. FRANCIS CO., a corporation existing under the laws of the State of Delaware.

*New Castle, July 8, 1931.*

*James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, for complainant.

*Harry K. Hoch,* City Solicitor, for defendant Board of Public Education in Wilmington.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for defendant William M. Francis Company.

THE CHANCELLOR: In the specifications upon which bids were invited the Board gave notice under "Section A, General Conditions," as follows:

"Except with permission of the Board of Public Education of Wilmington, all labor on this job, both skilled and unskilled, shall be *bona fide* residents of Delaware for at least six months prior to the award of this contract. This will be interpreted by the Building Committee of the Board of Public Education in Wilmington to mean:

(A—is omitted as of no relevancy to this cause.)

(B—The subcontractors on the job, as well as the men they employ must be *bona fide* residents of Delaware unless proof is presented, to the Board of Public Education in Wilmington, that it is impossible to secure the class of work called for from any Delaware concern.)

(C—is omitted as of no relevancy in this cause.)
(D—is omitted as of no relevancy in this cause.)"

By another provision in the specifications, bidders were required to give the names and addresses of subcontractors proposed to be used on any part of the work. The purpose of this manifestly was to enable the Board to see by inspection of the bids, whether any nonresident subcontractors were intended to be employed by the bidder in contravention of subparagraph B quoted *supra*.

The insertion of said subparagraph B was on the Board's own voluntary initiative. No law of the State required it. The authority of the Board over the construction of school buildings, however, is so broadly conferred by the act of its creation, that there can be no doubt of its power to adopt the regulation embodied in subparagraph B, if it be not constitutionally inhibited, or contrary to the statute requiring bids to be let to the lowest responsible bidder. Whether it is so inhibited either by the statute or by constitutional restraint is the principal point in the case.

Under "Section F, Carpentry," the specifications called for certain sash operating devices manufactured by Lord and Burnham Company, admitted to be a nonresident of Delaware. The bid of Herzog named Lord and Burnham Company as the subcontractor for the installation of the sash operating device manufactured by it. Herzog had presented no proof to the Board that it was impossible for him to secure the installation of the sash by any Delaware concern, and so had not secured permission to employ the Lord and Burnham Company as subcontractor. The Board took the position that Herzog's bid was not for this reason in compliance with the conditions imposed by the Board and so rejected it.

That it had the right to reject a bid which was submitted in violation of a valid condition upon which the proposals were invited, seems to me to be clear. I see nothing in the alleged conduct of the architect which justifies the view that the Board had waived the exactions of subparagraph B. The successful bidder was not led thereby into so believing. Herzog should not have been. If he was in

doubt about it, he could very easily have taken the proper steps to get himself informed.

The question of the issuance of a restraining order therefore comes down to the principal one of whether the condition in the specifications that all subcontractors shall be residents of this State for six months unless proof, resulting in permission, is presented to the Board that the class of work called for cannot be secured from a Delaware concern, is valid.

First, is it violative of the statute requiring bids to be awarded to the lowest responsible bidder? The purpose of such a statute is stated by some courts to be to secure economy in the construction of public works through competition among bidders on unrestricted cost bases. It is entirely conceivable that conditions of the type in question when inserted in building specifications, may under some circumstances of fact operate to increase the possible expense of the construction by forcing the competition among bidders to be entered into upon a high cost basis. But the Supreme Court of Wisconsin in *Milwaukee v. Raulf*, 164 *Wis.* 172, 159 *N. W.* 819, held that the purpose was not to insure that the public work should be done at the lowest possible cost. Hence an ordinance imposing an eight hour day for workmen employed by a contractor on a public work, notwithstanding it increased the cost, was held unobjectionable under a city charter that required public lettings to be made to the lowest bidder. Doubtless other authorities to the same effect may be found. On the other hand, authorities may be cited in conflict with this ruling. The time is not available to me to make an extensive examination of the authorities with the view of determining whether the Wisconsin rule should be adopted in this jurisdiction, or the rule, adhered to in other jurisdictions, that the purpose of the statute to secure low cost of construction is so fixed as not to allow the imposing of conditions on bidders which prevent them from securing labor under the most economical cost terms. I shall, for the purposes of

the present motion, without meaning to express an opinion on the point, take the view most favorable to the complainant, viz., that such a statute condemns the imposing of such conditions.

But even under that view, the courts adopting it say that whether the conditions imposed do violate the statute is to be determined, not by a mere inspection of the condition, but by whether or not its actual operation in practice does in fact increase the costs. In other words, whether the condition stands or falls is a question of fact; it does not carry its own *prima facie* condemnation. For instance in *St. Louis Quarry & Construction Co. v. Von Versen,* 81 *Mo. App.* 519, and in *Taylor v. Philadelphia,* 261 *Pa.* 458, 104 *A.* 766, the condition was found as a matter of fact to cause an increase in cost and therefore was held invalid under a statute requiring the work to be left the lowest responsible bidder; whereas in *Allen v. Labsap,* 188 *Mo.* 692, 87 *S. W.* 926, 3 *Ann. Cas.* 306, the condition was found not to effect an increase in cost and therefore was not invalid.

In the instant case the attack is made, so far as the statute is concerned, not against the condition in its general application to the contract, but against its application to the item that concerns the sash operating devices. It is with respect to this one item that the bill concerns itself. That the complaining taxpayer does not contend that the condition entailed increased the costs throughout all the items in the specifications or any considerable number of them, is evidenced by the fact that he seeks, as his prayers disclose, to force the Board to reject the bid of the Francis Company and accept the Herzog bid, a bid which was based on an observance of the condition in all the particulars of specification except the one of sash operating devices, which in relation to the whole was negligible. If the condition is as a fact one that promotes high costs, it is difficult to understand why the complaining taxpayer should be solicitous to compel the acceptance of a bid that was based in its prac-

tical entirety upon an observance of the condition. One would think that the taxpayer's complaint would, if reliance were placed on the supposedly high cost of operation entailed by the condition, object to an acceptance also of the Herzog bid. The bill not complaining against the statutory validity of the condition generally, but confining itself solely to the condition in relation to the sash-operating device item alone, I shall accordingly confine my consideration of the condition to its effect in fact upon that one item.

With respect to it, the allegations of the bill and what I heard at the argument justify the conclusion, that the condition in no wise contributed to an increase of cost.

There is nothing at present shown, which reasonably warrants the view that the condition, in its relation to the one item complained of, did as a matter of fact increase the cost. Every intendment of the bill's allegations touching the item, indicates that in point of fact the condition had no restrictive influence upon the bidders. That being the fact situation, it would be straining a point to direct a restraining order on the theory that the condition violated the statute; especially when to do so would be on the complaint of a taxpayer whose prayer is that another bid be forced on the Board which if there be the vice of costly competitive restraint in the condition imposed, is itself swollen by the high costs thereby entailed.

Second, is the condition that subcontractors, except with the permission of the Board, must be *bona fide* residents of Delaware for at least six months prior to the award, void because unconstitutional?

I shall proceed to answer this question upon the assumption that the situation is just as though the condition against nonresident subcontractors was one that some statute of the State required the Board as a public agency to impose, instead of its being imposed by the Board's voluntary will. The question was argued before me on that assumption.

The complainant contends that if the condition is constitutionally void, the Board had no right to allow it any weight as a cause for rejecting the Herzog bid.

The ground upon which the complainant assails the requirement that subcontractors shall be Delaware citizens as unconstitutional and therefore invalid is, that it excludes nonresidents of Delaware who are citizens of other states of the privilege of working as subcontractors on the job in question in violation of *Section 2, Article 4,* of the *Constitution of the United States.* That section provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

The Supreme Court of the United States in *McCready v. Virginia,* 94 *U. S.* 391, 24 *L. Ed.* 248, held that a law of Virginia which excluded citizens of other states from planting oysters in Virginia tidal waters was not invalid under the clause just quoted. The opinion proceeded on the ground that the land under the water was the property of the State of Virginia which represented the people of the State in their sovereign capacity, that the privilege which Virginia citizens had of using the common property was a property right and not a mere privilege or immunity of citizenship and that inasmuch as the citizens of one state are not invested by this clause of the *Constitution* with any interest in the common property of the citizens of another state, the law in question did not offend against the clause.

In *People v. Crane,* 214 *N. Y.* 154, 108 *N. E.* 427, 430, *L. R. A.* 1916*D,* 550, *Ann. Cas.* 1915*B,* 1254, the Court of Appeals had before it the question of the constitutionality of *Section* 14 of the *New York Labor Law (Consol. Laws, c.* 31). That section made it a crime for any contractor on any public works for the State or a municipality to employ any person other than a citizen of the United States and required that on all such works preference should be given to citizens of New York. The defendant contractor was convicted of having employed an Italian on a sewer basin which he was constructing under a contract with the City

of New York. He appealed on the ground that the statute under which he was convicted was violative, among other constitutional provisions, of *Section 2, Article 4*, of the *Constitution of the United States* (see the argument of counsel for the appellant appearing in *L. R. A.* 1916*D*, 550).

The case dealt with the employment of an alien, a citizen of Italy. The guaranties of *Section 2* of *Article 4* of the *Constitution* of course are applicable only to citizens of a State. In view, however, of the language of the treaty between the United States and Italy whereby the privileges are defined which aliens of Italian nationality may enjoy when admitted to the United States, it would seem that an Italian was as much entitled to claim the privileges safeguarded by *Section 2* of *Article 4* as if he were a citizen of some one of the states of this country. Therefore, while the case specifically dealt with the statutory denial to an alien of the right to be employed on a public work, yet it was in substance the same as if the alien had been a citizen of another one of the states. The opinion of the court holding the statute to be unobjectionable, takes the doctrine of *McCready v. Virginia, supra,* and applies its principle to the expenditure of public revenues in the construction of public works. The revenues received by governmental agencies constitute the common property of the people for whom the particular agency acts just as much so as does the physical asset of land under water such as was involved in the *McCready Case;* and as it was constitutionally permissible for a State to exclude noncitizens from the use of its State-owned land, so, said the New York Court, the State could with the same constitutional liberty exclude noncitizens from sharing as wage participants in the expenditure of the moneys belonging to it or its governmental subdivisions. "When," said the New York Court of Appeals, "payment for public works is to be made from public funds, it [the State] may prefer in employment its own citizens, since to them the Legislature may believe that the first duty is owing. * * * In each instance the State

announces as its public policy that the common property shall be used for the benefit of its common owners."

The New York court places its decision on the broad ground that a State when it is dealing with its own property is not required by the *Constitution of the United States* to place outsiders on a footing of equal participation in its enjoyment with its own citizens. While the case in which this conclusion was reached dealt with an alien, I do not regard it as not in point in the present one, for the logic of the opinion is equally applicable whether the person discriminated against be a citizen of one of the United States or an alien. *McCready v. Virginia, supra,* in fact upheld the State's right to prefer its own citizens as against, not an alien, but a citizen of another state, and in the New York case of *People v. Crane, supra,* it seems to me that the case of the alien, by reason of the treaty, must have been considered by the court as not differentiable from that of a citizen of another state.

*People v. Crane, supra,* went to the Supreme Court of the United States and was there affirmed. *Crane v. New York,* 239 *U. S.* 195, 36 *S. Ct.* 85, 60 *L. Ed.* 218. The companion case of *Heim v. McCall,* 239 *U. S.* 175, 36 *S. Ct.* 78, 60 *L. Ed.* 206, *Ann. Cas.* 1917B, 287, in which the same *Section* 14 of the *New York Labor Law* was under review, also affirmed the section's constitutionality.

It is to be noted that the latter case was one of an injunction bill which sought to enjoin the city from declaring the contractor's contract void because he had violated *Section* 14 of the *Labor Law.* That section provides, as before noted, that as among citizens of the United States, preference should be given to the citizens of New York over the citizens of other states. The bill charged, and the demurrer of course admitted, that the contractor had not given this preference to New York citizens. Thus the case in its facts very closely approaches the instant one, for in this one it appears that the substance of the Board's regulation was that Delaware citizens should be preferred as

subcontractors over citizens of every other state. The provision that the condition of residence might be waived if proof were presented that the work could not be procured to be done by a Delaware concern, would so indicate.

*Heim v. McCall, supra,* with its close analogy to this case, affirmed the power of the State to regulate the expenditure of its own funds and the funds of its agents in the employment of its own citizens upon public works to the exclusion of noncitizens.

The cases hereinbefore cited from the Supreme Court of the United States and from the New York Court of Appeals are based on general considerations which, aside from the particular facts involved, lead inevitably to the conclusion that the sort of regulation which the Board laid down and which is here objected to is beyond the condemnation of any constitutional inhibition.

In the course of the foregoing I have proceeded on the theory that though the regulation in question makes no mention of the words "citizens of Delaware," yet citizens were meant, for the phrase used, viz., *"bona fide* residents of Delaware for at least six months prior to the award of this contract" appears to me to indicate that it was Delaware citizens who were the object of the Board's solicitude.

The haste with which this memorandum was prepared, necessitated as it was by the inadvisability of delay in passing upon the motion, has prevented me from pointing out more fully the particularly pertinent language found in the foregoing cases which supports the conclusions herein reached. I must content myself with merely stating that the general discussion found in those cases will reveal to the reader of them ample reasons for the refusal of the restraining order asked for in this case.

Motion denied.