**HORVITZ, etc., Plaintiff-Appellant v. SOURS, etc., et, Defendants-Appellees**

Ohio Appeals, Second District, Franklin County

No. 3557.  Decided August 7, 1943.

David Ralph Hertz, Cleveland, for plaintiff-appellant.

Thomas J. Herbert, attorney general, Columbus, and Charles Williams, asst. atty. gen'l., Columbus, for Hal G. Sours, State Highway Director et.

302

Miller & Hornbeck, Cleveland, for Lombardo Bros. Construction Co., and The Herkner Construction Co.

GUERNSEY, J. of the Third Appellate District, sitting by designation in place of HORNBECK, J.

## OPINION

By GUERNSEY, J.

This is an appeal upon questions of law from a judgment of the Court of Common Pleas of Franklin County, Ohio, in an action pending therein wherein the appellant S. A. Horvitz, a taxpayer, for himself and in behalf of the taxpayers of the State of Ohio, was plaintiff, and the appellees Hal G. Sours, Director, Department of Highways, State of Ohio, and others were defendants.

The action is one to enjoin the Director of the Department of Highways of the State of Ohio, and certain other state officials, Lombardo Brothers Construction Company, as principal contractor, and The Herkner Construction Company as sub-contractor, from carrying out and performing a contract entered into between the Director of Highways, Lombardo Brothers Construction Company as principal contractor, and The Herkner Construction Company as sub-contractor, for the construction of a portion of a highway improvement known and designated as Willow Freeway Highway Project.

Upon the trial of this cause in the Common Pleas Court, the Court found in favor of the defendants and dismissed plaintiff's petition at his costs, and this is the judgment from which this appeal is taken.

During the years 1938 to 1941, the Department of Highways constructed a major project, known as the Cloverleaf Improvement, wherein an overhead was constructed carrying the Brecksville Road (U. S. 21) over the Cleveland-Canton Road (S. R. 17) at a point approximately seven miles south

of Cleveland, the cost of this project being approximately $800,000.00.

For a number of years it had been contemplated by the State Highway Department and other public authorities to construct a highway from the vicinity of The Cloverleaf to Cleveland to serve as a radial artery and as an entry-way from the south to the metropolitan area in Cleveland, such project having the support of the Commissioners of Cuyahoga County, the City of Cleveland and the Federal Bureau of Public Roads. This entire project has been known as the Willow Freeway, it being contemplated that said road should be constructed as a limited access road and a much needed improvement for the benefit of the public. This line of improvement is a part of the strategic network of defense roads, as established by the United States Government.

On November 19, 1941, the Congress of the United States passed an act, designated as "The Defense Highway Act of 1941", which supplemented the Federal Aid Road Act passed in 1916, and which was supplemented by an act passed May 27, 1941, authorizing the construction of roads urgently needed for the national defense during the national emergency declared by the President, and appropriated $25,000,000.00 for such purpose.

The road under consideration herein is a part of the system so designated by the Federal Government. Late in 1941 the Director of Highways prepared plans and specifications to construct a portion of said Willow Freeway extending north from the Cloverleaf under the tracks of the New York Central Railway to a point terminating at the right-of-way of the Newburg and South Shore Railroad, said project extending a distance of 1.681 miles, the estimated cost of which was $1,395,680.19.

In connection with the construction of this project, the Commissioners of Cuyahoga County agreed to acquire the right-of-way to Harvard Avenue, being the city limits, approximately one-half mile north of the limits of the present improvement, and did so acquire said right-of-way at a cost of more than $1,000,000.00. The plans of the proposed improvement under consideration in the contract herein were approved by Robert E. Williams, Resident District Deputy Director of Highways, from District No. 12, which includes Cuyahoga County; by Murray D. Shaffer, Chief Engineer of the Bureau of Location and Design of the Department of Highways; W. S. Hindeman, Chief Engineer of the Bureau of Bridges; Glenn R.

Logue, First Assistant and Chief Engineer; the Commissioners of Cuyahoga County, and Hal G. Sours, Director of Highways. The plans were later approved by the United States Bureau of Public Roads. The estimates were made public and the project advertised as required by statute and bids were opened at the time stated in the advertising, but only one bid was submitted, which was $51,000.00 under the estimated cost.

About a week after the opening of the bid, to-wit, on January 13, 1942, the Director of Highways awarded the contract to Lombardo Brothers Construction Company and said company duly executed a bond to secure the performance thereof, in the sum of $600,000.00.

The special provisions, as established by the Bureau of Public Roads, were attached to and made part of the proposal. Said regulations permitted the subletting of a contract provided the subcontractor named in the proposal was a contractor of recognized standing. The proposal contained a blank space for the designation of a subcontractor, who was to perform certain branches of the work and also contained a provision that all blank spaces should be filled in with ink.

In the proposal proper which was submitted by Lombardo Brothers Construction Company, there was no designation of a subcontractor in the blank space provided, but the proposal was accompanied by a letter from The Herkner Construction Company, wherein said company agreed to construct certain items of the work as a subcontractor.

The Director of Highways waived the requirement that such subcontractor should be designated in the main proposal, and approved the Herkner Construction Company as a subcontractor. Said approval was concurred in by the Bureau of Public Roads.

The proposal contained a further provision that no contractor should be relieved of his obligation to perform the contract in the event of a failure of a sub-contractor to perform the same.

At the time the proposal was submitted, a certificate of prequalification had been issued by the Director of Highways to the Lombardo Brothers Construction Company and also to the Herkner Construction Company.

The contractor immediately entered upon the site of the improvement and proceeded with the performance of the terms of the contract.

A priority rating was granted on the project by the War Production Board, designated as "A-4".

The contractor had completed a large project in Painesville and since the awarding of the contract under consideration herein, had received large quantities of steel under said rating, and the Highway Director was sure that the materials necessary for the work could be obtained under the rating granted.

Upon the subject as to the future construction of the entire Willow Freeway Project, it appears that for many reasons it was impractical to construct the whole project at one time. One of the reasons was the great cost and the difficulty of securing any particluar contractor who would be in position to construct the entire job. The plans are being prepared for the construction of the future sections of the project.

Director Sours, in answer to questions with reference to the future intention of constructing said Freeway, stated:

"We propose to follow it immediately with the letting of a second short section which will complete it to Harvard Avenue to be followed at the same time with the paving of the first section."

Messrs. Sours, Logue and Chaney of the Highway Department, testified that the present construction was the logical step to undertake in connection with the project as a whole, and was the practical thing to do at this time in view of all the conditions.

Plaintiff, in his original petition, set forth four causes of action, the first of which was devoted to a charge that the Director of Highways had abused his discretion in proceeding with the construction of the project.

In the second cause of action, plaintiff complained because the contract was awarded upon a single bid.

In the third cause of action plaintiff charged collusion or attempted bribery by an agent of the Lombardo Brothers Construction Company.

In the fourth cause of action he complained of the manner in which the subcontractor was approved.

Later, an amended petition was filed in which a fifth cause of action was inserted complaining that the Director of Highways did not have the Department of Industrial Relations determine the prevailing rate of wages, etc., as required by law.

During the progress of the trial in the Common Pleas Court, the plaintiff, over the objection of the defendants, amended his petition by interlineation, setting forth another

cause of action contending that the contractor and the sub-contractor were not prequalified, as provided by law.

As hereinbefore stated, the Court, upon the trial of the cause, denied the injunction and dismissed the amended petition.

A motion for new trial filed by plaintiff was overruled, and appeal bond fixed at $150,000.00. Plaintiff filed no application or motion to have the amount of the bond modified.

Other facts in evidence will be discussed in the consideration of the various assignments of error.

Plaintiff-Appellant summarizes his assignments of error and general contentions with reference thereto, as follows:

1. The appeal bond of One Hundred and Fifty Thousand dollars ($150,000.00) as required by the Court of Common Pleas is so exorbitantly excessive as to require at a minimum that this court remand to the lower court with instructions to fix bond in reasonable and proper amount.

2. The injunction should be granted as prayed because the contract is "illegal and void" in that it was awarded to contractors and a sub-contractor who had not been qualified previously therefor by the Director of Highways in accordance with mandatory requirements of §1206-1 GC et seq.

3. The injunction should be granted as prayed because the contract is illegal and void in that no schedule of the prevailing rates of wages determined at the request of the Department of Highways by the Department of Industrial Relations within ninety days of the award of the contract, was attached to and made a part of the specifications and printed on the bidding blanks, as required by and provided in §17-4 GC et seq.

4. The injunction should be granted as prayed because the contract is "illegal and void" in that it was awarded in violation of **General Code Section 1206** which requires competitive bidding, for this contractor was granted certain advantages which were denied specifically to prospective bidders, and was granted still other advantages which were never offered to all.

These contentions will be considered in the order mentioned.

1. As hereinbefore stated, the plaintiff made no application in the lower court for modification of the order of the court fixing the amount of the bond for appeal upon questions of law and fact, and there is no evidence tending to prove any abuse of discretion of the trial court in fixing

the amount of the appeal bond unless such abuse of discretion may be inferred from the facts in evidence on the merits of the case.

It is disclosed by the record that the contract, the performance of which is sought to be enjoined, involves the expenditure of $1,344,000.00 and that the work involved is being done under wartime conditions.

Considering the magnitude of the work and the conditions under which it is being performed, it is apparent that delays in the performance of the work occasioned by the suspension of the judgment of the Common Pleas Court denying the injunction, incident to an appeal upon questions of law and fact, would probably cause losses to the contractor and subcontractor which might even exceed the amount of the appeal bond as fixed, so that it does not appear from the facts in evidence that the bond is excessive, or that the court abused its discretion in fixing the amount thereof.

2. The second contention of plaintiff-appellant is that the qualification certificates issued to the contractor and subcontractor, prior to bidding on the contract pursuant to the provisions of the Act known as House Bill 281, now designated as §§1206 to 1206-8 GC, are void for the reasons hereafter mentioned, and the certificates being void the award of the contract was, under the provisions of §1206-1 GC, "illegal and void". The reasons he assigns for the certificates being void, are:

a. The applications of the contractor and sub-contractor for such certificates of qualification were not "accompanied by satisfactory evidence that the applicant had complied with the conditions of the Act of February 26, 1913, and of all Acts amendatory thereof and supplementary thereto and known as the Workmen's Compensation Law, and is not in default in the payment of premiums due from him under the provisions of such law" as prescribed in §1206-3 GC, one of the sections of said Act.

b. The Director of Highways did not personally examine and pass upon the applications of the contractor and subcontractor for qualification and did not personally make the determination that they were qualified, and did not personally execute the qualification certificate issued to each of them.

Under the provisions of said Act, the determination required to be made by the Director, upon the receipt of the application for qualification, by a prospective bidder is pre-

scribed in the Section of said Act now designated §1206-2 GC, and is "whether the applicant is competent and responsible and possesses the financial resources which satisfy the terms of the Act". This section further prescribes that "if the applicant is found to possess the qualifications prescribed by this Act and by the rules and regulations promulgated by the Director, the Director shall issue to him a certificate of qualification, which shall be valid for the period of one year, or such shorter period of time as the Director may prescribe, unless thereafter revoked by the Director for cause as hereinafter provided."

The only other provision of the Act in any way reflecting upon the qualifications of the applicant and the determination thereof by the director is contained in the section of said Act designated as §1206-3, reading as follows:

"No bidder shall be given a certificate of qualification unless his financial statement and the investigation made by the director of highways show that he possesses net current assets or working capital sufficient in the judgment of the director to render it probable that he can satisfactorily execute his contracts and meet his obligations therein incurred, which net current assets or working capital shall in no case be less than ten per cent of the aggregate amount of work set forth in his certificate of qualification."

There is no evidence of any rule or regulation promulgated by the director prescribing any other or different qualifications.

It will be noted that under the provisions mentioned, compliance by applicant with the Workmen's Compensation Law is not made a condition of qualification and no determination of such compliance is required to be made by the director. However, it is prescribed in the section of the Act now designated as §1206-3 GC, that "all applications shall be accompanied by satisfactory evidence that the applicant has complied with the conditions of the Act of February 26, 1913, and of all Acts amendatory thereof and supplementary thereto and known as the Workmen's Compensation Law, and is not in default in the payment of premiums due from him under the provisions of such law.

As compliance with the Workmen's Compensation Law is not made a condition of qualification and no determination of such compliance is required to be made by the director, it is ap-

parent that the requirement of §1206-3 GC, that applications shall be accompanied by satisfactory evidence of compliance, is merely incidental to the proceedings for such determination, and not of the essence nor essential to the validity thereof, and that such requirement is simply a statutory direction given with a view merely to a proper, orderly and prompt conduct of the business and by the failure to obey which the rights of those interested will not be prejudiced. Such provision is therefore directory and not mandatory. Sutherland Statutory Construction, Section Edition, Vol. 2 (1904) 1116.

Such statutory provision being directory and not mandatory, the failure to comply therewith did not render the determination of qualification and the issuance of the certificate thereof void.

Furthermore, even if such requirement is mandatory, there is nothing in the record tending to show that it was not fully complied with. The requirement is that the applications shall be accompanied by "satisfactory evidence." It is not specified whether such evidence shall be written or oral. The record shows the applications were accompanied by written evidence that the applicants were not in default in the payment of premiums due from them under the provisions of the Workmen's Compensation Law, and so far as the record shows, the applications may have been accompanied by oral evidence showing applicants had complied with said law in all other respects.

The first reason upon which plaintiff-appellant bases his contention that the certificates of qualification are void, is therefore without merit.

We will therefore proceed to consider the second reason upon which plaintiff-appellant bases his contention.

The record in this case discloses that one Oscar Miller, a "credit examiner" in the department of highways, was entrusted by the director of highways with the duty of making examinations of applications for qualification and verifying statements therein contained, and determining whether the applicant is competent and responsible and possessed the qualifications prescribed by the Act and the rules and regulations prescribed by the director, of issuing to the applicant, in the name of the director, and over his rubber stamp signature, a certificate of qualification; and that he performed such duties with reference to the certificates of qualification issued to the contractor and sub-contractor in the instant case.

There is no evidence tending to prove that either the contractor or sub-contractor were not, on their respective ap-

plications, entitled to the issuance of certificates of qualification in conformity with the terms of said Act.

The sole claim of plaintiff-appellant is that under the provisions of said Act, non-delegable discretion was vested in the director of highways to make the determinations mentioned and to issue such certificates, and consequently that the determinations by the credit examiner, and the issuance of the certificates in the manner they were issued, and the certificates, where wholly void.

In support of this claim he relies upon the rule stated in Mechem on Public Offices, Section 569, page 368, as follows:

"Where the boards and officers are vested with discretion and judgment, to be exercised in behalf of the public, the boards or officers must exercise it in person and cannot, unless expressly or impliedly authorized to do so, delegate it to others."

Many of the provisions of the Act in question prescribe and indicate that the discretion to make the determinations and issue the certificates mentioned, is vested in the director, so in applying the rule mentioned, the question to be determined is whether the director is expressly or impliedly authorized to delegate its exercise to others.

Throughout the whole of **Chapter 18 GC**, relating to the State Highway Department, the expression "the director shall", or its equivalent, is employed in every instant wherein the Legislature speaks concerning performance of duties within the highway department comprising the entire range of the activities of the department, but such duties are so multifarious that it is obvious it would be impossible for the director to personally perform each and all of them; and by reason of the nature and scope of the duties so enjoined upon the director, it is clear that while the director in terms is charged with performance thereof, it was the intention of the Legislature that he might delegate the performance thereof, including the performance of his duties determining the qualifications of bidders and issuing certificates thereof, to other officers and employees of the department whom he might designate to perform such duties.

This being the case, the director was impliedly authorized to delegate the exercise of discretion and judgment to be exercised on behalf of the public in the matter under discussion, to Miller, the credit examiner, and Miller, being so authorized

by the director, properly performed such duties, and his determination as to the qualifications of the contractor and subcontractor, and the certificates issued to him are valid.

Furthermore, the awarding of the contract by the director was a ratification of such determinations and the issuance of such certificates by Miller, in the name of the director.

For the reasons mentioned, the second ground assigned for the invalidity of said certificates and the awarding of said contract, is without merit.

3. An inspection of the photostatic copies of the specifications and bidders blanks attached as exhibits to the bill of exceptions discloses what purports to be a schedule of prevailing rates of wages was attached to and made a part of the specifications for the work and printed on the bidding blanks, and that the proposal, among other things, provided that:

"The minimum wage to be paid all labor employed in this contract shall be in accordance with the 'Schedule of Prevailing Hourly Wage Rates' ascertained and determined by the Department of Industrial Relations applicable to state highway improvements in accordance with §§17-3, 17-4, 17-4a, 17-5 and 17-5a GC."

There is no evidence tending to prove that such schedule is incorrect in any respect.

The gist of plaintiff-appellant's complaint is, (a) that the schedule used in the contract constitutes only a determination of "minimum wages set up under collective bargaining agreements and not the prevailing wages", as required by the statute; (b) that the determinations were the result of the efforts of Mr. Ehret, an employee of the Department of Industrial Relations, rather than the director of the department.

The evidence is to the general effect that irrespective of the sources from which they were obtained, the rates prescribed in the schedule mentioned were the prevailing rate of wages in effect at the time, as ascertained and determined by the Department of Industrial Relations at the request of the Highway Department, in conformity with the provisions of §§17-3, 17-4, 17-4a, 17-5 and 17-5a GC, which renders nugatory the first ground of complaint under this assignment.

A further complete answer to this ground of complaint, and also the second ground of complaint under this assign-

ment, is that there is no provision of the Act now designated as §§17-3, 17-4, 17-4a, 17-4b, 17-4c, 17-5 and 17-6 GC, prescribing that a contract let without complying with the provisions of the Act shall be illegal or void, and by the terms of the Act the legal consequences attendant upon non-compliance with the Act are prescribed, none of which in any way impinge upon the validity of the contract not let in conformity with the provisions thereof.

This being the case, the statutory rule of construction that the expression of one thing is the exclusion of another, applies, and it cannot be held that the contract in question was void or illegal by reason of noncompliance with the provisions of said Act.

For the reasons mentioned, the third assignment of plaintiff-appellant is without merit.

4. Under this assignment the plaintiff-appellant argues that the contract was awarded without competitive bidding, in that (A) the sub-contractor was not named directly in the proposal; and (B) that the amount of work to be sublet was greater than that allowed under federal provisions.

The department of highways' specifications provided that proposals must be submitted on proposal forms provided by the director of highways, and the proposal in the instant case was submitted on such form. The form, on page 5, provided:

"Preparation of Proposal—

"The blank spaces in the proposal must be filled in correctly where indicated and written in ink."

Blanks were provided in the form, for the name of the subcontractor, the item numbers to be sublet, the approximate quantities, the unit price, and the total amounts.

In the proposal submitted by the contractor, the name of the subcontractor, the items to be sublet, the approximate quantities, the unit price, and the total amount of the subcontract were left blank.

The proposal, however, was accompanied by a letter signed by the subcontractor, in which it appears that the subcontractor contemplated receiving from the state directly, payment for $679,179.05 worth of work, or 50.51 per cent of the total contract.

The federal special provisions, which were made a part of the specifications, provide that a contractor proposing to

sublet more than twenty per cent of the value of all work shall state in his proposal, the items to be sublet and the name of the proposed subcontractor; and that the contractor also must attach to his proposal a certificate by the subcontractor that the subcontractor's name was used with subcontractor's knowledge and consent.

The proposal as originally filed did not conform with these requirements of the federal special provisions.

Four days after the bids were opened the contractor and subcontractor were permitted by the director to file letters. In these letters the items to be sublet were altered, and the amount of the work to be sublet was reduced to some forty per cent. The letters also changed the manner of payment so as to permit payment to the contractor instead of the subcontractor directly, and the contractor and subcontractor, in writing, both committed themselves to the subcontract.

The contract as let conformed to the requirements of the last sentence of §17-4a GC in that it specifically authorized the contractor to sublet the work which he did sublet.

The naming of the subcontractor, the item numbers to be sublet, the approximate quantities, the unit price, and the total amounts in the proposal are not required by any statutory provision, but are simply requirements based on a rule of the Department of Highways, directory in character.

The federal special provisions mentioned are not statutory requirements but are merely formal rules adopted by the federal agency participating in road improvements of the character of the one in controversy, and are directory in character.

As both the rule of the highway department, and the federal special provisions are directory in character and not based on any statutory requirement they were the subjects of waiver by the agencies which promulgated them, and the evidence in this case shows affirmatively that such rule and such provisions were waived.

As the contract was let upon the condition that "Written consent to sublet, assign or otherwise dispose of any portion of the contract shall not be construed to relieve the contractor of any responsibility for the fulfillment of the contract", such waivers could not detrimentally affect the rights of any of the parties concerned, or the rights of any prospective bidder or any taxpayer.

314

The federal aid provisions further prescribe that:

"* * * Such item or item of work may be performed by such subcontractor notwithstanding the eighty per cent limitation above mentioned. Provided that subcontractor named in the proposal is a contractor of recognized standing, has a record of satisfactory performance, and the work proposed to be sublet does not constitute the major item or items of work embraced in the contract."

The concurrence of the federal agency in this contract and in its letting constitutes a conclusive determination that the subcontractor named in the proposal is a contractor of recognized standing, has a record of satisfactory performance, and the work proposed to be sublet does not constitute a major item or items of work embraced in the contract.

For the reasons mentioned, the matters complained of by plaintiff-appellant under this specification did not in any way affect the competitive character of the bidding on the contract, and the assignment is therefore without merit.

5. The action being one to enjoin public officers from the commission of acts in excess of legal authority and requiring the expenditure of public money, the plaintiff, as a taxpayer, regardless of motive, has sufficient interest to maintain it. **Green v State Civil Service Commission, 90 Oh St 252, 107 N. E. 551.**

Plaintiff-appellant makes further assignment of error, not included in his summary of assignments hereinbefore mentioned, to the effect that the letting of the contract at the time it was let constituted an abuse of discretion by the director of highways.

Upon this specification he argues that because the improvement covered by the contract was only part of a general improvement, and the completion of the work covered by the contract would not permit public use of the improvement until other parts thereof are completed; and because of the scarcity of materials for such improvement occasioned by war conditions, the director of highways abused his discretion in awarding the contract.

The matter of letting the contract at the time it was let was wholly within the discretion of the director of highways, and in view of the fact that the improvement was one ap-

proved by an agency of the federal government as part of the defense system of highways in this country, and was participated in by such agency, and priorities therefor granted by the proper agency of the federal government, it is obvious that the director of highways did not abuse his discretion in letting the contract at the time it was let.

Finding no error in any of the respects specified and argued in plaintiff-appellant's brief, the judgment of the Common Pleas Court will be affirmed at costs of plaintiff-appellant.

BARNES, P. J., and GEIGER, J., concur.