MERWIN O. BADER,
plaintiff below, Appellant,

*vs.*

HUGH R. SHARP, JR., J. DRAPER BROWN, JR., BENJAMIN F. SHAW, II, J. GORDON SMITH, WILLIAM P. RICHARDSON, FRANK R. GRIER, and DALLAS D. CULVER, being and constituting the Commissioners of the State Highway Department of the State of Delaware; A. S. WIKSTROM, INC., a corporation of the State of New York; CLARENCE S. COLLINS, JR., as State Treasurer of the State of Delaware, and WILLIAM A. McWILLIAMS, as Chief Engineer of the State Highway Department,
Defendants below, Appellees.

*Supreme Court on Appeal, March 18, 1955.*

*John Merwin Bader,* Wilmington, for appellant.

*Herbert L. Cobin,* Chief Deputy Atty. Gen., for appellees State Highway Department, State Treasurer and Chief Engineer of State Highway Department.

*Richard F. Corroon,* of Berl Potter & Anderson, Wilmington, for appellee A. S. Wikstrom, Inc.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: This is a taxpayer's suit to enjoin the award by the State Highway Department of a contract for public work. The essential question is whether an alleged variance from the bidding requirements by the successful bidder was so substantial as to require the rejection of its bid.

In July 1954 the State Highway Department advertised for bids for a contract for the construction of the superstructure of the new Walnut Street Bridge in Wilmington. Bids were opened on September 1, 1954. A. S. Wikstrom, Inc., one of the defendants, was the lowest bidder. Wikstrom had failed to execute a form contained in the bidding papers. It is as follows:

"Certification

"I/we do hereby certify that necessary commitments for supplying material required for the following items entering into the construction of this contract have been obtained from:

Cement:
...................................
          (Name of Supplier)    (Address)

Coarse Aggregate:
...................................
          (Name of Supplier)    (Address)

Structural Steel:
...................................
          (Name of Supplier)    (Address)

Reinforcing Steel:
...................................
          (Name of Supplier)    (Address)

Signature of Bidder .........................

By .................................

Address .................................

Date: ......................."

At the request of the Department, Wikstrom on September 2, 1954 advised the Department of the names of the suppliers from which it expected to obtain the required material.

The Department had reserved the right "to waive technicalities". The Chief Engineer asked the Attorney General whether the Department had the right to waive the omission of the execution of the certificate and was advised that it had that right. Thereupon the Department awarded the contract to Wikstrom.

Plaintiff below (the appellant) then sued to enjoin the execution of the contract, contending (1) that the certificate was an integral part of the bidding proposal, and (2) that the Department had no authority to waive non-execution because the variance was material and destroyed the competitive character of the bidding.

The Vice Chancellor held that the certificate was a part of the proposal, but concluded that its non-execution was an insubstantial variance not affecting the amount of the bid and that the Department was within the law in awarding the contract to Wikstrom. He therefore granted defendants' motion for summary judgment. See 35 *Del.Ch.* 57, 110 *A.2d* 300.

The taxpayer appeals, and renews here the two contentions made below. Defendants reply (1) that the certificate is no part of the bid proposal because it was to be executed only *after* the awarding of the contract, and (2) that in any event the failure to execute it had no relation to the amount of the bid and was an immaterial variance that the Department, in the exercise of a sound discretion in the public interest, could properly waive.

In the view we take of the case it is unnecessary to consider defendants' first contention, and we pass at once to the second.

Because favoritism in awarding contracts for public works leads inevitably to waste of public money, statutes providing for competitive bidding are uniformly construed to require that all bidders must bid upon the same thing and upon substantially the same terms. The general rule is stated in 43 *Am.Jur.*, "Public Works and Contracts", § 40, as follows:

"It is a general rule that the bid of one proposing to contract for the doing of a public work must, in order to secure the contract, respond or conform substantially to the advertised terms, plans, and specifications; otherwise, the board or official whose duty it is to award the contract may properly refuse to give the bid consideration. Indeed, it is the duty of the public authorities to reject all bids which do not comply substantially with the terms of the proposal, for any other rule would destroy free competition.

\* \* \*

"Generally, before a variation from the specifications will be deemed to destroy the competitive character of a bid for a public contract, the variation must be substantial, that is, it must affect the amount of the bid. It is sufficient if the bid conforms substantially to the advertisement. A slight or immaterial variance from the specifications and the advertisements for bids for a public contract does not destroy the competitive character of the bid so as to require its rejection. A variation from the advertised specifications does not destroy the competitive character of a bid unless it affects the amount of the bid by giving the bidder an advantage or benefit not enjoyed by other bidders. There is no dispute about the rule itself; the practical question in the cases is whether there was substantial conformity or a material variance, and this is determined largely with reference to whether the bidder's proposal gives him an advantage or benefit which is not enjoyed by other bidders."

As always with a rule of this sort, the diffculty lies in its application. When is a bidding variance so substantial that it can reasonably be said to have given the successful bidder an unfair advantage? This is a question of fact, to be resolved in the light of all the circumstances.[1] No rigid rules for guidance can be formulated, nor would they be desirable. For this reason it would serve little purpose to analyze the numerous cases dealing with the varying types

1. *Cf. Ebbeson v. Board of Public Education,* 18 *Del.Ch.* 37, 156 *A.* 286. Whether a bidding condition restricting laborers to Delaware residents is void, as increasing the cost of the project, is a question of fact: "it does not carry its own *prima facie* condemnation." 18 *Del. Ch.* 41, 156 *A.* 288.

of bidding deviations. Each case reflects, in effect, the reviewing court's evaluation of the importance of the particular variance under consideration. We therefore turn to the facts.

■■ The particular variance here is the failure to execute a statement certifying that the bidder has obtained from the suppliers listed in the statement commitments for the furnishing of four items of material required for the work. As the Vice Chancellor said, the purpose to be served by the certificate is not wholly clear. It is not mentioned in the bidding proposal itself, nor in any of the provisions attached to it. We take it to be a requirement designed to assure the Department that a prospective bidder will be able to perform the contract if he gets it, and hence a requirement bearing upon the bidder's responsibility. The law requires that the Department award the contract "to the lowest responsible bidder". 17 *Del.C.* § 154. It is the Department's duty to ascertain whether the lowest bidder is responsible. This duty it must necessarily perform after the bids are opened. Consequently the furnishing of the certificate as a part of the bidding proposal would seem to be merely a requirement for the Department's convenience. It may therefore properly be dispensed with if the Department is otherwise satisfied that the successful bidder is responsible. And in determining whether he is responsible, the Department is vested with a broad discretion. Its decision will not be disturbed by the courts unless it is illegally or arbitrarily exercised. *Fetters v. Mayor and Council of Wilmington*, 31 *Del.Ch.* 319, 325, 72 *A.2d* 626.

In these circumstances the failure to furnish the certificate appears to be an immaterial variance having no bearing upon the amount of the bid.

Plaintiff argues, however, that even if the amount of the bid in this case was not affected, Wikstrom has obtained competitive advantage over the other bidders in two respects; that these advantages are substantial; and that its bid should be accordingly rejected, because substantial bidding inequality is in itself sufficient cause for rejection.

First, it is said that bidders complying with the requirement must devote more time to preparation of their bids than a non-conforming bidder, because they must obtain bids or offers from the material men. The Chief Engineer's affidavit shows that a month elapsed between the advertisements and the opening of the bids. It is not claimed that this period of time was unreasonably short. The argument reduces to this, that the other bidders went to some extra trouble in order to obtain their commitments. Presumably written offers were obtained. It seems unlikely that any bidder would submit a bid without going to the trouble of ascertaining a probable source of supply of required materials and their probable cost,[2] and it is difficult to believe that the extra labor involved is substantial. In our opinion the alleged factor of extra time devoted to the matter is much too tenuous to support a claim of substantial inequality in the bidding.

Second, it is claimed that a bidder who is not required to obtain commitments from suppliers is given a competitive advantage, because if successful in obtaining the contract he may "shop around" among suppliers and, as the general contractor, obtain lower prices than would have been quoted to one who is only a prospective bidder. Knowing this, the non-conforming bidder is enabled to reduce his bid accordingly. On the other hand, a bidder who has a definite commitment from a supplier may not "shop around" because he is bound to deal with the supplier who has given the commitment. Hence, says plaintiff, to relieve a bidder from the requirement of certifying to commitments from suppliers tends in the long run to open the door to favoritism in the bidding.

This argument is unacceptable for two reasons:

First, the argument is built upon the assertion that a bidder who has obtained commitments from suppliers, and who has certified their names to the Department, is obligated to deal with them only and is precluded from "shopping around". This assertion finds no support

2. This inference is supported by the facts of this case. Wikstrom had actually obtained commitments for the two items of steel, and had a ready source of supply for the other two items from two companies from which it was currently buying similar material for the work of building the substructure of the bridge—a related project.

in the language of the certificate or in any of the bidding papers. It seems to be based on a statement in one of the affidavits that the commitment "is considered in the trade to be binding on both parties". This averment is a highly dubious foundation for a claim that an offer to furnish materials is a contract binding the offeree to buy them, and that the certificate is supposed to assure the execution of such a contract. The conclusion that both parties are bound by the "contract" seems to be based on ethical rather than legal considerations— upon a feeling that it is unfair to a material man for a bidder to list him as an intended source of supply and then deal with some one else. All this may be so, but it does not reach the point. There is nothing to show that the Department's form of certificate was prepared in the light of such considerations or was designed to give legal protection to material men. So far as the bidding papers disclose, the Department was not concerned with the matter. Why should it be? In our view, as we have before said, the list of suppliers was called for to enable the Department to assure itself of the responsibility of the general contractor. Plaintiff suggests that the Department's requirement is analogous to the statutes dealing with bidding on public buildings, requiring a bidder to list proposed subcontractors, and, if awarded the contract, to deal only with them. See 29 *Del.C.* § 6908, § 6910; construed in *Haddock v. Board of Public Education, 32 Del.Ch.* 245, 84 *A.2d* 157. This is plainly not so, as a comparison between the Department's certificate and the elaborate provisions of the statute at once shows. Indeed, the enactment of the statute suggests that in cases to which it does not apply the successful bidder may lawfully deal with whom he likes.

It follows that so far as the requirements of the certificate are concerned any successful bidder may deal with any material men, remaining responsible to the Department for the performance of his contract. The alleged bidding inequality thus disappears, and the contention based upon it falls.

Second. Even if we were to accept plaintiff's contention of some inequality in the bidding by reason of the moral compulsion upon a bidder to deal with the material men listed in the certificate, plaintiff would be in no better case. It is not every bidding inequality

that is sufficiently substantial to require the rejection of the bid. The inequality must have some relation to the amount of the bid. Of course the inequality may be such as to enable a court to say that it did affect the bidding. Such cases occur when the bids vary in respect of the subject matter or the time of performance. See, for example, *International Motor Co. v. City of Plainfield*, 96 *N.J.L.* 364, 115 *A.* 391; *Van Reipen v. City of Jersey City*, 58 *N.J.L.* 262, 33 *A.* 740; *Konig v. City of Baltimore*, 126 *Md.* 606, 95 *A.* 478; *Urbany v. City of Carroll*, 176 *Iowa* 217, 157 *N.W.* 852. But in other cases, as here, the connection between the inequality and the bid may be so slight that it may be disregarded.

The instant case is similar in its facts to the case of *Horvitz v. Sours*, 74 *Ohio App.* 467, 58 *N.E.2d* 405. In that case it appeared that the proposal form of the Department of Highways required the bidder to list the sub-contractor. This requirement was held to be directory in character and one that could be waived.

Examination of the record in this case reveals no basis for a finding that Wikstrom has enjoyed any real preferment over the other bidders. The evidence indicates the contrary. The most plaintiff has shown (if anything) is that there might conceivably be cases in which the successful bidder's opportunity to "shop around" might have affected the amount of his bid.

From a possibility of harm in a hypothetical case plaintiff seeks to extract a general principle of law that would compel the rejection of the low bid in many cases, such as this one, in which no real or substantial inequality is shown. Such a rule would subvert the primary purpose of the statutes which is to prevent the waste of public money. *Fetters v. Mayor and Council of Wilmington, supra.*

The contention of the plaintiff, at bottom, is that the Department's action in this case in waiving the execution of the certificate listing suppliers of material tends to open the door to fraud or unfair competition and defeats the purpose of the statute requiring competitive bidding. The Vice Chancellor specifically rejected this contention and we are in accord with his conclusion.

The judgment of the Court of Chancery is affirmed.