LIGHT & POWER CONSTRUCTION COMPANY, a corporation of the State of Delaware,
Plaintiff,

*vs.*

J. H. TYLER MCCONNELL, BENJAMIN ABLEMAN and J. HENRY TOPKIS, being the members of Delaware Interstate Highway Division, State Highway Department, State of Delaware, TIM O'CONNELL and JOHN B. O'CONNELL, Trading as TIM O'CONNELL & SONS, and ISAAC WATKIN,
Defendants.

*New Castle, February 12, 1962.*

*Donald W. Booker,* of Coxe, Booker, Walls & Cobin, Wilmington, for plaintiff.

*James L. Latchum,* of Berl, Potter & Anderson, Wilmington, for defendants, J. H. Tyler, McConnell, Benjamin Ableman and J. Henry Topkis, members of Delaware Interstate Highway Division.

*Wilfred J. Smith, Jr.,* of Smith & Gentile, Wilmington, for defendants, Tim O'Connell and John B. O'Connell, trading as Tim O'Connell & Sons.

The defendant Isaac Watkin has not yet appeared.

SEITZ, Chancellor: Plaintiff is a Delaware corporation with its main office and place of business in this State. It has sued the members of the Delaware Interstate Highway Division ("Division"), Tim O'Connell and John B. O'Connell trading as Tim O'Connell & Sons ("defendant contractor"), and Isaac Watkin.

Plaintiff seeks and this is the decision on its application for a restraining order. The application arises out of the following situation. On December 18, 1961, the defendant contractor submitted to the Division a bid for the construction of a maintenance shed at the Delaware Memorial Bridge. Defendants admit that the instructions to bidders required compliance with *29 Del.C.* § 6908. Plaintiff was listed as the electrical subcontractor in the defendant contractor's bid. The defendant contractor was the low bidder and was awarded the contract about January 5, 1962.

On January 23, 1962, the defendant contractor requested the Division to substitute the defendant Watkin for the plaintiff as the electrical subcontractor. By resolution the Division consented to such substitution presumably on the basis of a finding that plaintiff had defaulted in performance. It seems to be agreed that the sole

basis for the defendant contractor's request and the Division's action was the failure of plaintiff and the defendant contractor to agree on the terms of their contract. The plaintiff was advised of the Division's action and immediately requested a hearing by the Division, stating in effect that it considered the Division's action illegal. When it was unable to obtain any consideration from the Division it instituted this action and made the present application.

At this stage the court will not engage in an elaborate discussion of the matter. In any event, many of the points are covered by the opinion of the Vice Chancellor in *Haddock v. Board of Education,* 32 *Del.Ch.* 245, 84 *A.2d* 157 in which he considered the provisions of the law which are alleged to be the basis for the present bid and the subsequent action of the defendant contractor and the Division. Counsel for the Division suggests that it may be that this law is inapplicable to the Division because of some special law applicable to it. I think the short answer at least at this stage must be that the Division's counsel admits that the procedure provided in § 6910 was attempted to be observed in approving the substitution. I will therefore consider that Code section applicable in resolving the present application.

It is not contended that plaintiff, as subcontractor, lacks standing to maintain this action. I therefore do not decide that point. Defendants' primary contention is that plaintiff has an adequate remedy at law. I am unable to follow this contention because admittedly there exists no contract between the plaintiff and defendant contractor. It was the failure of the plaintiff to execute a contract in the terms submitted by the defendant contractor which caused the defendant contractor to ask the Division to make the substitution. Thus, plaintiff presumably cannot sue at law for breach of contract. If plaintiff has a tort action it is not at all clear that it will give it the full relief to which it is entitled, if vindicated.

In any event, viewed as a taxpayer's suit, plaintiff has standing in equity under the decision of the Vice Chancellor in *Haddock v. Board of Education,* above. I realize that the *Haddock* case involved an application to enjoin which was made before work had com-

menced. Nevertheless, the Vice Chancellor there enjoined both the Board of Education and the contractor not only from entering into the contract in dispute but from executing the same. It is true that we are not here concerned with the legality of the original contract. We are concerned with the replacement of a subcontractor after the bid has been awarded. That situation is covered by *29 Del.C.* § 6910 which reads as follows:

> "After the contract for any public work costing more than $5,000 is let unto any bidder, no bidder shall substitute another subcontractor for any subcontractor whose name is set forth in the bidder's accompanying statement without the written consent and permission so to do having theretofore been given by the officer, agency, department or political subdivision of the State under whose jurisdiction such public work is being performed. No such express consent and permission so to do shall be given unless it is established to the satisfaction of such officer, agency, department or political subdivision, in good faith, that the subcontractor in question whose name is listed in the bidder's accompanying statement has defaulted in performance of the part of the work covered by the subcontract, or is no longer engaged in such business."

Section 6910 makes it clear that the Division may authorize a substitution only for the reasons therein set forth. Contrary to the contention of the attorney for the Division, § 6910 and these related provisions were not enacted for the benefit of the particular public authority involved. Rather they were adopted to correct what was deemed to be an unhealthy condition existing between contractors and subcontractors in the building industry. See *Haddock v. Board of Education,* above. Thus, the implementation of this mandatory statute, compare *Haddock v. Board of Education,* above, and see *Bader v. Sharp,* 36 *Del.Ch.* 89, 125 *A.2d* 499, at page 503, requires the court to look at the matter in the way which may be best calculated to implement its purpose. Having this in mind I now consider the present situation.

It is conceded by defendants' counsel that plaintiff received no notice of the defendant contractor's application to the Division

to make the substitution. Nor did the Division notify plaintiff that it was considering such request. Plaintiff was first advised of the resolution after it was passed.

Plaintiff points out that not only was this decision made without hearing its side of the matter but its consequences generally are even more serious. Plaintiff has performed most if not all of this type of work on the Delaware Memorial Bridge and the fact that it has been adjudged in default of performance will result in serious impairment of its rights under the law of Delaware. Indeed, it may impair plaintiff's ability to obtain performance bonds. While these consequences are obviously more important to plaintiff than to the public generally, they are legitimate areas of judicial concern in view of the judicially recognized statutory purpose.

It thus appears that the Division made a determination that the plaintiff was in default of performance and made this determination without any notice to the plaintiff when one was certainly feasible. Section 6910 required the Division to make a "good faith" determination that plaintiff had defaulted in performance before it could authorize the substitution. It is difficult to imagine how a good faith determination of this type could be made absent the giving of notice of a hearing thereon to the alleged defaulting party. Since the facts surrounding this aspect of the matter are not in dispute it seems clear to the court that plaintiff's probability of ultimate success is sufficiently high to justify the granting the somewhat extreme relief here requested.

In considering the nature of the restraining order to be issued, I point out that the defendants concede that the plaintiff moved with all diligence to bring this matter before the court. Yet, both the Division and the defendant contractor went ahead to authorize and permit the substituted subcontractor to commence the electrical work. As I understand it, part of that work has now been done. I should also say that although the substitute subcontractor's price is higher, the contractor is absorbing the difference. Thus the Division is not paying any more for the work. Nevertheless it seems

clear to me that the Division's decision cannot be considered a good faith determination within the meaning of the statute because of the failure to provide plaintiff with an opportunity to present its version of the matter to the Division before a decision was made. I express no opinion as to whether, had there been a hearing, the facts would have justified the Division's decision insofar as Section 6910 is concerned.

I will therefore issue an order temporarily restraining the Division and Tim O'Connell and John B. O'Connell trading as Tim O'Connell & Sons from permitting the performance of or performing any more of the subject matter covered by the electrical subcontract. Of course, the defendants are free to permit plaintiff to do such work. In balancing the convenience of the respective parties, I have considered the construction involved. I do not believe the nature of the project is such as to cause any concern because of the delay in its completion.

I will issue no restraining order against Watkin because admittedly he did not receive notice of the present application.

If the parties cannot agree on the amount of bond I will hear the parties upon application.

Present order on notice.