110 A.2d 300 (1954)
Merwin O. BADER, Plaintiff,
v.
Hugh R. SHARP, Jr., J. Draper Brown, Jr., Benjamin F. Shaw, II, J. Gordon Smith, William P. Richardson, Frank R. Grier, and Dallas D. Culver, being and constituting the Commissioners of the State Highway Department of the State of Delaware; A. S. Wikstrom, Inc., a corporation of the State of New York; Clarence S. Collins, Jr., as State Treasurer of the State of Delaware, and William A. McWilliams, as Chief Engineer of the State Highway Department, Defendants.
Court of Chancery of Delaware, New Castle.
December 23, 1954.
John M. Bader, Wilmington, for plaintiff.
Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, for defendant A. S. Wikstrom, Inc.
Clarence W. Taylor, Wilmington, for defendants Commissioners of State Highway Department of State of Delaware, State *301 Treasurer and Chief Engineer of State Highway Department.
MARVEL, Vice Chancellor.
In July, 1954, the State Highway Department of the State of Delaware advertised by publication and mailing for bids on its Contract No. 1224-(4) for the erection of the superstructure for a proposed Walnut Street Bridge in Wilmington. Those wishing to bid competitively were directed to submit sealed bids and attention was drawn to the special provisions of the proposed contract, the standard specifications governing contract work for the Department and the proposed contract agreement itself. Bidders were directed to submit bids upon forms provided by the Department. Specifications were advertised as available at five dollars per set, and specific terms concerning performance of the contract were set forth in detail in a red bound proposal for bids, consisting of 153 pages, which was furnished to interested contractors. Sealed bids were opened[1] on September 1, and the lowest bid, in the amount of $1,242,171, was that of the defendant, A. S. Wikstrom, Inc. The next to lowest bid was that of J. A. Bader and Co., Inc., some $15,000 higher than the low bid.
Plaintiff, a citizen and taxpayer of Delaware, and president of J. A. Bader and Co., Inc., has brought suit on his own behalf and on behalf of persons similarly situated to enjoin the entering into and performance of Contract No. 1224-(4) by the apparently successful bidder and the disbursement of any funds by the State of Delaware pursuant to the proposed contract on the grounds that its execution and performance would constitute an ultra vires act on the part of the State Highway Department and result in an unlawful diversion of State funds, and that the low bid of A. S. Wikstrom, Inc. was not responsive to the invitation for bids in that the corporate defendant failed to fill out and execute a certificate concerning material suppliers found on page 8 of the proposal for bids (exhibit B to the McWilliams affidavit). The complaint also charges that the award of the proposed contract to the corporate defendant would undermine the principle of competitive bidding by countenancing the acceptance of a bid made on more favorable terms than those properly met by others including the next to lowest bidder.
The corporate defendant admits that it did not fill out the form of certification contained in the proposal but claims that it did furnish the information called for in the certification on the day following the opening of the bids. Its answer also avers that the State Highway Department, while having the authority to insist on the completion of the certification form prior to submission of bids, also had the power to waive completion of such form.
The answer of the State Highway Department and of the individual defendants states that the controversial certification form did not constitute a part of the proposal for bids for the proposed contract, and that in any event the information required by the form of certification was later supplied by the successful bidder. This answer further avers that paragraph 14 of the standard specifications of the State Highway Department, which specifications were incorporated by reference into the proposal for bids, reserved to the Department the right to waive technicalities, to reject all or any bids, to advertise for new proposals, to proceed to do the work otherwise, or to abandon the work if in the judgment of the Chief Engineer of the Department the best interests of the State would be thereby promoted. It is also averred that after the bids were opened and after receiving information from the corporate defendant concerning its proposed material suppliers, the State Highway Department and its Chief Engineer determined that the interests of the State would be best served by waiving the requirement for certification of the names of material suppliers; that the failure of the corporate defendant to make out the certification was at the most not a material deviation from the proposal, and that *302 A. S. Wikstrom, Inc. had in effect complied with the request for bids.
Plaintiff and defendants have moved for summary judgment and there being no genuine issue as to any material fact, judgment may be entered as a matter of law.
The proposal for Contract No. 1224-(4) is set out in a red bound book prepared by a New York engineering firm and submitted as exhibit B to the McWilliams affidavit. This book, which contains the form of proposed contract and contract bond for the Walnut Street Bridge superstructure, beginning at page 149, also contains at page 140 et seq. the form of bid proposal and bid bond to be used by prospective bidders. The rest of the red book contains terms and clauses relating to the proposed contract for the construction of the bridge, which are stated to supercede the provisions of standard specifications of the State Highway Department where inconsistent with such provisions. On page 8 of the book appears the following form:
"Certification
"I/we do hereby certify that necessary commitments for supplying material required for the following items entering into the construction of this Contract have been obtained from: * * *"
Here follow spaces for the listing of suppliers for cement, coarse aggregate, structural steel, and reinforcing steel. The form concludes with a space for the signature and address of a prospective bidder and the address of such bidder.
The State Highway Department through its Chief Engineer (McWilliams' affidavit) takes the position that the certification, being separated from the form of bid by 132 pages of printing in the red book, is not part of the bidding papers. While an effort is made by the defendant to minimize the significance of the certification, no convincing explanation if given as to why it was not executed by the low bidder. I conclude that the certification was an integral part of the bidding papers and a matter to be considered and weighed by a prospective bidder (as was all of the matter in the red book and in the standard specifications) preliminary to the submission of a bid. Furthermore, the certification by its very terms required that it not only be read and digested but that it be executed by any prospective bidder.
The question thus presented is what are the legal consequences of the failure of the corporate defendant to complete the certification.[2] Was the failure to observe a nonstatutory specification a mere technical noncompliance with a bidding requirement which may be waived by a State agency? The answer to this question lies in a determination of whether or not the responsive proposal made by the non-complying bidder gave it an advantage or benefit not enjoyed by other bidders, including J. S. Bader Co., Inc.
This case is unlike that of Haddock v. Board of Public Education in Wilmington, 32 Del.Ch. 245, 84 A.2d 157, relied on by plaintiff. In that case there was a statutory requirement that a bidder for the type of public building there sought to be constructed list the sub-contractors whose services were intended to be used in the event of acceptance of the bid.
In the second Delaware case relied on by plaintiff, namely the case of Ebbeson v. Board of Public Education in Wilmington, 18 Del.Ch. 37, 156 A. 286, the Chancellor was concerned with a situation in which the public body soliciting bids insisted on full compliance with all terms of the bidding papers, including a clause voluntarily inserted by the Board of Education requiring that where available sub-contractors be Delawareans. In the case at bar there is no statutory requirement that there be a certification and the Highway Department, *303 the interested State agency, is not insisting on compliance with the certification directions.
The principle governing the right of a public agency to overlook bidding informalities is set forth as follows in Vol. 43 American Jurisprudence, Public Works and Contracts, § 40, at page 781:
"A slight or immaterial variance from the specifications and advertisements for bids for a public contract does not destroy the competitive character of the bid so as to require its rejection. A variation from the advertised specifications does not destroy the competitive character of a bid unless it affects the amount of the bid by giving the bidder an advantage or benefit not enjoyed by other bidders. There is no dispute about the rule itself; the practical question in the cases is whether there was substantial conformity or a material variance, and this is determined largely with reference to whether the bidder's proposal gives him an advantage or benefit which is not enjoyed by other bidders. * * *
"A distinction may be made between the question whether a bid is so irresponsive to the proposal that the public authorities may properly refuse to consider it, and the question whether it is so defective that they may not legally award the contract to the bidder;  in other words, the discretion of such authorities is a matter which may be important on these questions, and it would seem that a board having power to award contracts for public improvements may have power to make an award to one whose bid is informal or fails in some particular to comply with the proposal, while, if it refuses to consider the bid, it may not owe any duty to accept the same which the bidder can enforce."
As stated above, there is a general acceptance of the above rule, the difficulty lying in applying it to the specific case particularly in the light of what seems to me to be the primary purpose of statutes dealing with bidding on public works, namely to protect the public against the wasting of its money, Haddock v. Board of Public Education in Wilmington, 32 Del.Ch. 245, 84 A.2d 157; Fetters v. Mayor and Council of Wilmington, 31 Del. Ch. 319, 72 A.2d 626. Such primary purpose must, however, give way before the mandatory requirement of a statute governing bidding requirements. In the case at bar, as pointed out above, there was no mandatory requirement that the certification be placed in the bidding papers so that the basic question is, as stated, can its execution be waived? In my opinion a non-mandatory bidding requirement can be waived where the bid is responsive and the competitive nature of the bidding is not destroyed.
In the case of Pascoe v. Barlum, 247 Mich. 343, 225 N.W. 506, 507, 65 A.L.R. 833, the court in discussing the type of variation in a bid which destroys the competitive character of bidding, added:
"But not every variation from the specifications will destroy the competitive character of the bid. To have that effect, the variation must be substantial. To be substantial, it must affect the amount of the bid. It must give the bidder an advantage or benefit not allowed to other bidders. It must be an element considered in fixing the price."
The complaint in this case charges that the awarding of Contract No. 1224-(4) to the corporate defendant will constitute an ultra vires act involving improper spending of public money and that such award, if consummated, will "* * * tend to undermine the principle of equal competitive bidding on public construction work through awarding a contract to a bidder whose bid was not responsive to the proposal," and that the "* * * threatened acts will injuriously affect the rights and property of plaintiff, as a taxpayer, as well as those of others similarly situated."
*304 The Bader affidavit adds nothing to the basis of the complaint. It discusses competitive inequality but fails to charge that the corporate defendant made a lower bid or was directly benefited because it failed to complete the certification. The Carota affidavit charges that in order to furnish the certification it is necessary for the general contractor to have prices quoted by the various suppliers; that commitments so obtained are considered binding in the trade, and that without such commitments a general contractor is not only allowed a longer period to negotiate for prices but is also permitted to bargain for better prices in the event he is the low bidder on the project. In answer to this latter charge the corporate defendant points out that it entered into so-called binding commitments for structural steel on August 30 and for reinforcing steel on August 31, and intends to obtain cement and coarse aggregate from the same supplier presently furnishing it such materials for the substructure of the bridge. As to these latter two materials it is stated there are no commitments but that if the price of such materials goes up instead of down, the corporate defendant will lose any advantage it might have had were commitments with such suppliers in force.
It necessarily follows that no real showing has been made by plaintiff that the failure of the corporate defendant to complete the certification was an element entering into the fixing of the amount of its bid.
The facts are unlike those in the case of Coller v. City of St. Paul, 223 Minn. 376, 26 N.W.2d 835, where the low bid stated specifications for meters radically different than those advertised by the municipal authority and gave the successful bidder an advantage of two dollars on each meter to be manufactured.
In Tufano v. Borough of Cliffside Park, 110 N.J.Eq. 370, 165 A. 628, the low bidder had not complied with a fundamental specification (apparently not required by statute) which directed that each bidder on a garbage removal contract submit proof of legal ownership or lease of a suitable dump. This the low bidder failed to do, although its bid was accompanied by an attorney's letter indicating that a lease would be obtained if the bid were successful. Obviously this failure to comply with the specification was not a "mere technical irregularity" but went to the heart of the proposed contract. Flaunting it definitely put the low bidder in a more favorable position than that of other bidders who met the basic specification.
I am not convinced that the failure to report commitments with suppliers destroyed the competitive character of the bid of the corporate defendant in the case at bar. While the purpose of the certification is not clear,[3] I cannot agree with plaintiff's contention that the action of the Highway Department in not insisting that the form of certification be completed by all responsive bidders prior to opening of the bids opens the door to fraud, unfair competition or defeats the purpose of any pertinent statute enacted to protect the taxpayers of the State. Plaintiff's motion for injunction is denied and summary judgment will be entered for defendants.
Order on notice.
NOTES
[1] The time for bidding was extended from August 18 by the State Highway Department after the original invitations to bid had been issued.
[2] The Wikstrom bid was responsive to the invitation to bid in that it met the terms of the proposal as to the type and quality of the work to be done, its only defect being the omission of the certification.
[3] The certification did not have the purpose of keeping contracts in Delaware as was the case in Ebbeson v. Board of Public Education in Wilmington, supra, nor is there any indication that the materials to be obtained for the project are difficult to obtain. The Highway Department, having contracted with the corporate defendant for the substructure of the bridge, obviously had no fears concerning the responsibility of the low bidder and, in any event, paragraphs 11 and 13 of standard specifications of the Department protect the State against irresponsible bidders prior to signing of a formal contract.